COMMONWEALTH of Pennsylvania, Appellee

v.

Curtis Allee WILLIAMS, Jr., Appellant.

Superior Court of Pennsylvania.

Argued April 30, 2013.

Filed April 30, 2014.

Joshua Auriemma, Washington, DC, for appellant.

Jason E. McMurry, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: STEVENS, P.J.*,
BENDER, BOWES, GANTMAN,
DONOHUE, ALLEN, OLSON, OTT and
WECHT, JJ.

* President Judge Stevens did not participate in

OPINION BY DONOHUE, J.:

Appellant, Curtis Allee Williams, Jr. ("Williams") appeals from the trial court's May 16, 2011 judgment of sentence imposing 5 to 10 years of incarceration for aggravated assault and recklessly endangering another person. Williams argues that the trial court erred in excluding evidence of the blood alcohol content ("BAC") of the victim, Harrison Purdy ("Purdy"), a witness at trial. Because Purdy was intoxicated during his encounter with Williams, and because Purdy gave a testimonial account of that encounter at trial, we conclude that the trial court misapplied the law of evidence by excluding the BAC evidence. We therefore vacate the judgment of sentence and remand for a new trial.

The record reveals that Williams and Purdy were both driving their vehicles on Nyes Road in Harrisburg at the same time on April 12, 2009. Purdy's vehicle was behind Williams' vehicle, traveling in the same direction. Their accounts differed as to how the altercation started and escalated. Purdy testified that Williams suddenly applied his brakes and gestured toward Purdy, in apparent dissatisfaction with Purdy's following too close. Williams testified that Purdy's vehicle approached too quickly from behind, nearly rear-ending Williams' vehicle. Williams testified that he became upset with Purdy because Williams' baby was in the backseat of his car and his son was in the front passenger seat. Williams testified that Purdy's vehicle continued to follow too closely.

With both cars stopped at an intersection, Purdy exited his vehicle and approached Williams' vehicle, shouting and angered by what he believed to be Williams' offensive conduct. Williams also exited his vehicle and shot Purdy as Purdy

the consideration or decision of this case.

was approaching Williams' car. Williams testified that he told Purdy to stop, and that it appeared that Purdy was reaching under his shirt for a gun. Purdy testified that Williams simply opened his car door and opened fire on Purdy.

Purdy sustained a gunshot wound to his leg and was taken to a local hospital for treatment. A blood test revealed Purdy was legally intoxicated, with a BAC of 0.156.

Police arrested Williams and charged him with attempted homicide, aggravated assault, and recklessly endangering another person ("REAP").[1] The Commonwealth filed a pre-trial motion *in limine* seeking exclusion of the evidence of Purdy's BAC. The trial court granted that motion on December 3, 2010. After a two-day trial, a jury found Williams guilty of aggravated assault and REAP, but not guilty of attempted homicide. The trial court's May 16, 2011 judgment of sentence imposed an aggregate five to ten years of incarceration. Williams filed a timely appeal, and a three-judge panel of this Court affirmed the judgment of sentence with one judge dissenting. Subsequently, this Court granted Williams' petition for reargument.

We must decide whether the trial court erred in granting the Commonwealth's pretrial motion *in limine* to exclude evidence of Purdy's BAC level. During trial, the central issue was Williams' assertion of self-defense. Williams took the stand in his own defense and testified that he believed, based on Purdy's apparent extreme anger, that force was necessary to protect himself and his children. Williams argues that Purdy's BAC level was admissible to challenge the accuracy of Purdy's testimonial account of the events leading up to the shooting. The Commonwealth argues that the BAC evidence was cumulative and irrelevant because other witnesses confirmed that Purdy exited his SUV and appeared confrontational as he approached Williams' vehicle.

Admission or exclusion of evidence at trial rests within the discretion of the trial court. *Commonwealth v. Glass,* 50 A.3d 720, 724–25 (Pa.Super.2012), *appeal denied,* 63 A.3d 774 (2013). We will not reverse the trial court's decision absent an abuse of that discretion. *Id.* "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 725. "If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Id.*

The trial court excluded evidence of Purdy's BAC because it found the evidence not relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. The trial court further concluded that Purdy's BAC, even if relevant, was inadmissible because it was unfairly prejudicial to the Commonwealth's case, pursuant to Rule of Evidence 403:

> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Pa.R.E. 403.

Our Supreme Court has "consistently held that intoxication on the part of a

---

1. 18 Pa.C.S.A. §§ 2501, 2702(a)(1), 2705.

witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration." *Commonwealth v. Small,* 559 Pa. 423, 444, 741 A.2d 666, 677 (1999) (*quoting Commonwealth v. Drew,* 500 Pa. 585, 591, 459 A.2d 318, 321 (1983)). The *Drew* Court explained:

> Any deficiency of the senses, [ ... ] which would substantially lessen the ability to perceive the facts which the witness purports to have observed, should of course be provable to attack the credibility of the witness, either upon cross-examination or by producing other witnesses to prove the defect....
>
> Abnormality ... is a standard ground of impeachment. One form of abnormality exists when one is under the influence of drugs or drink. If the witness was under the influence at the time of the happenings which he reports in his testimony or is so at the time he testifies, this condition is provable, on cross [examination] or by extrinsic evidence, to impeach.

*Drew,* 500 Pa. at 590, 459 A.2d at 321 (*quoting* McCormick, *Evidence* § 45 (2d ed. 1972)). In *Drew,* the Supreme Court concluded that the trial court properly admitted evidence of the defendant's .18 BAC. *Id.* at 591, 459 A.2d at 322. The BAC evidence allowed the jury to assess and weigh the conflicting testimony of the defendant and a Commonwealth witness. *Id.*

As noted above, Williams' primary theory of the case was that he shot Purdy in self-defense. The Pennsylvania Crimes Code defines self-defense as follows:

> § 505. Use of force in self-protection.
>
> (a) Use of force justifiable for protection of the person.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505.

The record reveals that several other motorists observed the altercation between Purdy and Williams, and the witnesses agreed that Purdy exited his vehicle and approached Williams' vehicle, and that Purdy appeared agitated as he did so. N.T. 4/7–10/11, at 145–47, 170–75. Specifically, Bertha MaShelle Graves ("Graves") testified that she saw a man get out of an SUV and approach a smaller car. *Id.* at 145. The door of the smaller car swung open and she heard shots fired. *Id.* Likewise, Michael Cahill ("Cahill"), testified that he saw a man getting out of an SUV. *Id.* at 170–71. His body language evinced a confrontation. *Id.* at 172. Cahill heard shots fired as the SUV driver approached the Chevrolet. *Id.* at 173. Cahill heard an additional shot as he was performing a K turn to leave the area. *Id.* at 175. Neither Graves nor Cahill offered testimony as to what transpired before Purdy exited his vehicle.

Purdy testified that he was driving his SUV and talking on his cell phone when he noticed the driver of the car in front of him looking back at him while pointing and making gestures. *Id.* at 100. Purdy testified that the driver slammed on the brakes in an apparent dissatisfaction with Purdy following too closely. *Id.* Purdy attempted to pull off of the road into a Sam's Club, but the car in front of him "cut back up in front of me." *Id.* at 101. Upset by those actions, Purdy got out of his car and approached the other car while screaming. *Id.* at 102. Purdy further testified that "I was just angry and I wanted him to know that I was angry. Nothing more." *Id.* at 109. As Purdy was approaching the other car, the driver opened his door, pointed a

gun at Purdy's chest, and started shooting. *Id.* at 102–03.

Williams, testifying in his own defense, stated that "this big old truck flew up on us" after he stopped his car at a stop sign. *Id.* at 253. Williams was upset and scared because his baby was in the backseat and he believed a rear-end impact from the truck could have been fatal to the baby. *Id.* Williams gestured to the driver of the truck in attempt to convey that a baby was in the back seat of his car. *Id.* According to Williams, the truck continued following him "bumper to bumper." *Id.* at 255. When Williams stopped his car at an intersection, the other car came "flying up" behind him. *Id.* at 260. Williams testified that the driver got out of his car and quickly approached Williams' car. *Id.* at 265. The driver had his hand under his shirt and Williams believed he saw the driver's hand on a shiny object that might have been a firearm. *Id.* Williams testified that he yelled for the driver to stop, because Williams' baby was crying. *Id.* The driver continued to approach, and Williams opened fire. *Id.*

In summary, Williams and Purdy were the only two witnesses who testified about the encounter from its inception, and each portrayed the other as the aggressor. Williams' testimony, if believed, establishes unprovoked aggression and potentially threatening behavior on Purdy's part. Purdy's testimony, if believed, establishes that Williams provoked the encounter by slamming on his brakes and making gestures, and that Williams opened fire without warning as Purdy approached Williams' car to express his anger.

Based on the foregoing, we conclude that the trial court committed an error of law in excluding evidence of Purdy's BAC. As set forth by our Supreme Court in *Drew,* evidence of a witness' intoxication is admissible impeachment evidence where the witness was intoxicated during the event to which he or she testifies. Thus, we disagree with the trial court's conclusion that the evidence was irrelevant. Furthermore, we disagree with the trial court's conclusion that the BAC evidence was more prejudicial than probative simply because other witnesses confirmed that Purdy exited his car before Williams and approached William's vehicle in an apparent agitated state. As explained above, no witness other than Williams or Purdy observed the incident from its inception. Evidence of Purdy's BAC would have allowed the jury to perform its core function of assessing Purdy's credibility and the weight of his testimony, in keeping with our Supreme Court's rationale in *Drew.*

In addition, the trial court believed "the societal stigma associated with driving drunk" rendered the BAC evidence more prejudicial than probative. Trial Court Opinion, 8/9/11, at 7. We cannot accept this reasoning, as it would effectively preclude admission of BAC evidence for any witness who happened to be driving.

Our Supreme Court in *Drew* set forth a simple analysis governing the admissibility of witness intoxication. Evidence of intoxication during the events that are the subject of the witness' testimony is admissible. Evidence of a witness' intoxication at other times is not admissible. *Drew,* 500 Pa. at 591, 459 A.2d at 321. We therefore conclude that the trial court erred in excluding evidence of Purdy's BAC. Because Purdy's testimony strongly undermined Williams' self-defense theory, which was the central issue at trial, we cannot conclude that the trial court's error was harmless. For these reasons, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

GANTMAN, J. files a Dissenting Opinion.

DISSENTING OPINION BY GANTMAN, J.:

I respectfully disagree with the majority's decision to vacate Appellant's judgment of sentence and remand the case for a new trial. Instead, I would affirm the judgment of sentence. Hence, I dissent.

This case involves an incident of aggressive driving that escalated into a roadside shooting. On April 12, 2009, Appellant was driving on Nyes Road in Harrisburg; Mr. Purdy was in a sports utility vehicle directly behind Appellant. Appellant believed Mr. Purdy was going too fast and following too closely, so Appellant used his brakes to slow down and alert Mr. Purdy. Mr. Purdy understood Appellant's driving as playing a brake game, to which Mr. Purdy took exception. The situation intensified to the point where both men were irritated with each other. While they were queued in a line of four cars which were all stopped at a red light, Mr. Purdy exited his car and approached Appellant's vehicle, which was directly in front of Mr. Purdy's car. Appellant quickly left his car, grabbed his gun, pointed the gun at Mr. Purdy, and fired three shots. The third shot hit Mr. Purdy in the leg as he was retreating to his own vehicle. After the police arrived, both men were detained. Mr. Purdy was rushed to the hospital, where doctors treated him for the gunshot wound. Routine tests performed at the hospital revealed Mr. Purdy had a blood alcohol content ("BAC") of 0.156.

Police charged Appellant with criminal attempt homicide, aggravated assault, and three counts of REAP. The parties filed various pre-trial motions. On August 27, 2009, Appellant filed an omnibus pretrial motion for writ of *habeas corpus* alleging the Commonwealth's evidence was insufficient to support a *prima facie* case of criminal attempt homicide. The court denied Appellant's *habeas* motion on March 11, 2010 (finding sufficient testimonial evidence from preliminary hearing on May 20, 2009, to infer Appellant intended to and did fire three shots at Mr. Purdy and third shot was fired while Mr. Purdy was retreating).

The Commonwealth filed a motion *in limine* on October 22, 2010, to preclude the proposed testimony and report of Frank Ingram, Jr., Appellant's "expert witness," stating Appellant did not shoot Mr. Purdy with specific intent to kill him and Appellant acted in self-defense. The Commonwealth asserted Mr. Ingram was not qualified to render such an opinion in this case, and the anticipated opinion would unfairly bolster Appellant's version of events while minimizing other evidence. The Commonwealth also sought to exclude any evidence of Mr. Purdy's BAC at the time of the incident as irrelevant. Finally, the Commonwealth sought to preclude any evidence or testimony concerning pending charges against a family member of Mr. Purdy, which the defense wanted to use as evidence of Mr. Purdy's bias in favor of the Commonwealth's case against Appellant.

On November 5, 2010, Appellant filed a pre-trial motion seeking (1) to preclude the Commonwealth from producing evidence at trial through its medical expert that Mr. Purdy had developed a life-threatening blood clot in his injured leg; (2) to compel production of the Commonwealth's expert's *curriculum vitae* and report; (3) to compel production of the 911 recordings from the incident; (4) to preclude all use of the "loaded language" of "victim" or the

phrase "crime scene" as unduly prejudicial to the defense. ·

In Appellant's response to the Commonwealth's October 2010 motion *in limine*, he argued against preclusion. Specifically, in answer to the Commonwealth's motion to preclude evidence at trial of Mr. Purdy's BAC, Appellant averred: "The alleged victim's aggression towards [Appellant] is both relevant and material to [Appellant's] action on the day of this incident. Alcohol intoxication, by its very nature, affects the personality of the intoxicated party, causes [one] to engage in risky or potentially dangerous behavior that they would not otherwise engage in, and reduces the cognitive functional ability and decision making process. Based on all of those factors, the fact that the victim's B.A.C. at the time of the incident was .15[6] should ultimately be considered by the jury." (*See* Defense Answer to Commonwealth's Motion *in Limine*, filed 11/10/10, at ¶ 11.) Notably, Appellant did not argue the BAC was admissible to impeach Mr. Purdy's recollection of the events which led to the shooting.

By order dated December 3, 2010, and filed December 6, 2010, the trial court granted the Commonwealth's motion *in limine*, stating: "It is hereby ordered that the Commonwealth's motion is granted. Therefore, Frank Ingram, Jr. is not to be called as an expert witness by [Appellant], the victim's B.A.C. level is inadmissible at trial, and any evidence or testimony concerning pending charges against the victim's family member shall be excluded at trial." (*See* First Order, filed 12/6/10.) By separate order dated and filed on the same date, the court denied Appellant's motion to preclude at trial any evidence of Mr. Purdy's blood clot and to exclude the use of "loaded language" such as "the victim" and "the crime scene." (*See* Second Order, filed 12/6/10.) The court granted

Appellant's motion to compel the Commonwealth's expert report and the 911 recordings of the incident. (*See id.*)

On January 14, 2011, Appellant filed a motion for reconsideration of the court's first order of December 6, 2010. In the motion for reconsideration, Appellant raised **for the first time** that the court should admit Mr. Purdy's BAC as relevant, material evidence calling "into question his credibility, perception, and intent and therefore must be considered by the jury to ensure that any adjudication is fair, accurate, and reliable[.]" Appellant also argued for the first time that preclusion of this evidence violated "both substantive due process and also the accused's right of confrontation." (*See* Motion to Reconsider, filed 1/14/11, at ¶ 2.) On March 1, 2011, the court denied Appellant's motion to reconsider.

The case proceeded to a jury trial on March 7, 2011. Immediately pre-trial, Appellant again argued to admit Mr. Purdy's BAC on four grounds: to impeach Mr. Purdy by contrast to his statement to police, to impeach Mr. Purdy based on his perception of the incident (notwithstanding testimony by independent eyewitnesses), to prove Mr. Purdy's "aggressiveness," and to prove his bias in favor of the Commonwealth for not charging him with DUI. (N.T. Trial, 3/7/11, at 8–18). After extensive oral argument, the court denied the motion.

At trial, Appellant offered self-defense as his justification for the shooting. After several days of testimony, the jury found Appellant guilty of aggravated assault and one count of REAP, but found him not guilty of criminal attempt homicide and two other counts of REAP. The trial court imposed an aggregate sentence of five (5) to ten (10) years' imprisonment on May 16, 2011. Appellant timely filed a notice of appeal on May 25, 2011. The court or-

dered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on June 22, 2011.

On appeal, Appellant argued the court's decision to preclude Mr. Purdy's BAC was reversible error for three reasons: (1) Mr. Purdy's BAC was sufficiently high that a person of ordinary skill would be able to ascertain he was intoxicated, and that knowledge would affect the jury's determination of whether Appellant was in danger of serious bodily harm, acted reasonably under the circumstances, and had no duty to retreat; (2) Mr. Purdy was not prosecuted for a DUI offense, and Appellant should have been able to address this issue on cross-examination for bias; (3) evidence of Mr. Purdy's intoxication was admissible as to how it affected his credibility or recollection of the incident. Appellant conceded that the independent eyewitnesses presented at trial a clear picture of what had happened during the incident. Nevertheless, Appellant maintained there remained "large issues concerning [Mr. Purdy's] perception of events," such that "the jury's verdict could have been a mistake." Appellant also argued the court erred when it denied Appellant's motion to prelude "loaded language" such as use of the word "victim" in reference to Mr. Purdy. A panel of this Court, with one dissent, affirmed the judgment of sentence.

Appellant sought reargument *en banc,* in which he focused entirely on the evidence of Mr. Purdy's BAC as "effectively always relevant and admissible for purpose of impeachment." Appellant complained the eyewitness accounts of the incident differed significantly; only Mr. Purdy described Appellant as the aggressor; and the jury should have been allowed to weigh Mr. Purdy's BAC in its assessment of his credibility. This Court granted *en banc*

reargument by order of July 20, 2012, and a new briefing scheduled was entered.

On *en banc* reargument, Appellant raised the following issue for our review: EVIDENCE IMPEACHING A WITNESS' RECOLLECTION OF THE EVENTS HE TESTIFIED ABOUT IS ALMOST ALWAYS RELEVANT AND ADMISSIBLE. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO SUPPRESS EVIDENCE THAT THE MAN SHOT BY [APPELLANT] WAS EXTREMELY INTOXICATED DURING THE ENCOUNTER WHEN [APPELLANT] ARGUED SELF–DEFENSE?

(Appellant's Substitute Brief at 1).

On re-argument, Appellant now emphasizes that Mr. Purdy's BAC result was relevant to impeach his perception of the incident. Specifically, Appellant contends Mr. Purdy's intoxication had a direct bearing on how he formed his trial testimony and was a matter for the jury's consideration. Appellant maintains there were "considerable" discrepancies in the trial testimony between Mr. Purdy and the other eyewitnesses, such as whether Mr. Purdy had left his vehicle once before the incident, whether Appellant was applying his brakes while driving, and whether Mr. Purdy was angry. Appellant complains Mr. Purdy's testimony painted a picture of himself as the reasonable participant and "if believed by the jury, would assist the Commonwealth in overcoming its burden that [Appellant] did not reasonably perceive a threat, and that [Appellant] rather than [Mr.] Purdy was the initial aggressor. Furthermore, ... evidence of [Mr.] Purdy's intoxication at the time of the shooting would substantiate [Appellant's] belief that [Mr.] Purdy was 'acting crazy.'" (*Id.* at 14). Appellant concedes relevant evidence can be suppressed if it is more prejudicial than probative. Nevertheless,

Appellant submits the trial court failed to identify the probative value of Mr. Purdy's testimony and did not progress to the next stage of the analysis. Even if Appellant could not tell Mr. Purdy was intoxicated, the probative value of Mr. Purdy's testimony went directly to Appellant's claim of self-defense and defense of others, which the Commonwealth was required to disprove. Appellant insists the mere fact that the jury could have decided against Appellant's affirmative defense based on Mr. Purdy's testimony necessarily implies Mr. Purdy's BAC was both relevant and probative. Appellant proceeds to discount any "high probability" that the jury would be carried away by the fact that Mr. Purdy was drinking and driving. Appellant swears such analysis defies the philosophical principle of Occam's razor (positing principle of parsimony used in problem solving that solution selected should be one with fewest assumptions). Finally, Appellant submits the court's decision to bar evidence of Mr. Purdy's BAC was not harmless error because the BAC information would call into question Mr. Purdy's ability to perceive the events giving rise to the case, prevent the jury's conclusion that Appellant was the initial aggressor, and support the reasonableness of Appellant's response. Appellant asserts only Mr. Purdy's BAC results could adequately challenge his trial testimony, even though other eyewitnesses rebutted his testimony. Appellant states he had the right to confront Mr. Purdy's recollection of the incident directly with his BAC results, instead of having to settle for attacking his credibility through other evidence. Appellant closes with the proposition that a different verdict "may have resulted" if only the court had admitted Mr. Purdy's BAC results at trial. Appellant concludes the court erred in precluding Mr. Purdy's BAC results at trial. I simply cannot

agree that Appellant's argument merits the relief requested.

"A motion in *limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *Commonwealth v. Bobin,* 916 A.2d 1164, 1166 (Pa.Super.2007). A trial court's decision to grant or deny a motion *in limine* is generally subject to an evidentiary abuse of discretion standard of review. *Commonwealth v. Moser,* 999 A.2d 602, 605 (Pa.Super.2010), *appeal denied,* 610 Pa. 595, 20 A.3d 485 (2011).

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard,* —— Pa. ——, ——, 80 A.3d 380, 392 (2013).

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman,* 70 A.3d 874, 878–79 (Pa.Super.2013), *appeal denied,* —— Pa. ——, 85 A.3d 482 (2014).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.... [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with

the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power.... We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Commonwealth v. Garcia,* 443 Pa.Super. 414, 661 A.2d 1388, 1394–95 (2004), *appeal denied,* 543 Pa. 709, 672 A.2d 304 (1996) (quoting *Paden v. Baker Concrete Const., Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995) (internal citations and quotation marks omitted)). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez,* 57 A.3d 74, 81 (Pa.Super.2012), *appeal denied,* 619 Pa. 678, 62 A.3d 379 (2013).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook,* 597 Pa. 572, 602, 952 A.2d 594, 612 (2008). The Pennsylvania Rules of Evidence provide:

**Rule 401. Definition of "relevant evidence"**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Pa.R.E. 401. Rule 402 states:

**Rule 402. General Admissibility of Relevant Evidence**

All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.

Comment: Pa.R.E. 402 differs from F.R.E. 402. The Federal Rule specif-

ically enumerates the various sources of federal rule-making power. Pa. R.E. 402 substitutes the phrase "by law."

Pa.R.E. 402 states a fundamental concept of the law of evidence. Relevant evidence is admissible; evidence that is not relevant is not admissible. **This concept is modified by the exceptions clause of the rule, which states another fundamental principle of evidentiary law—relevant evidence may be excluded by operation of constitutional law, by statute, by these rules, by other rules promulgated by the Supreme Court or by rules of evidence created by case law.**

\*     \*     \*

Pa.R.E. 402 (emphasis added). In other words, evidence that is relevant to an issue in a particular case can still be incompetent and therefore inadmissible because one or more established rules of evidence preclude its admission. *Id. See also Commonwealth v. Paddy,* 569 Pa. 47, 70–71, 800 A.2d 294, 308 (2002) (stating: "Evidence that is relevant may nevertheless be inadmissible if it violates a rule of competency ...").

For example, "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa. R.E. 403; *Commonwealth v. Page,* 965 A.2d 1212, 1220 (Pa.Super.2009).

Trial judges generally enjoy broad discretion regarding the admission of potentially misleading or confusing evidence. Trial judges also have the authority to exclude relevant evidence if its probative value is substantially out-

weighed by the danger of unfair prejudice or confusion. Furthermore, the function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value, and it is not for an appellate court to usurp that function.

*Commonwealth v. Parker*, 882 A.2d 488, 492 (Pa.Super.2005), *affirmed on other grounds*, 591 Pa. 526, 919 A.2d 943 (2007).

The Pennsylvania Crimes Code governs self-defense in relevant part as follows:

### § 505. Use of force in self-protection

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**—

\* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) **the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . .**

\* \* \*

18 Pa.C.S.A. § 505(a)-(b) (emphasis added).[1] According to the Pennsylvania Supreme Court, the justified use of deadly force requires:

a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995). The defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). The Supreme Court explained the evidentiary burdens as follows:

While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* (internal citations omitted). *See also Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa.Super.2008) (stating same standard).

If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not

---

1. Pennsylvania's "stand your ground" law became effective August 29, 2011. The shooting here occurred on April 12, 2009, so the 2011 amendment to Section 505 does not apply to this case.

justifiable self-defense." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229–30 (Pa.Super.2005).

The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa.Super.2008), *appeal denied*, 600 Pa. 743, 964 A.2d 894 (2009) (quoting *McClendon*, supra at 1230). The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was imminent danger of death or great bodily injury and it was necessary to shoot to save himself from that danger. *Commonwealth v. Sepulveda*, 618 Pa. 262, 288–89, 55 A.3d 1108, 1124 (2012).

The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 617 Pa. 527, 551, 53 A.3d 738, 752 (2012). For example, in *Mouzon*, the defendant claimed self-defense, he feared for his life, and he did what any reasonable person would have done by pulling a gun on the aggressor. The Commonwealth disproved the claim by showing that once the defendant pulled the gun, the victim backed up, freeing the defendant to leave. *Id.* (holding evidence was insufficient to support claim of self-defense, where all witnesses agreed that once defendant pulled his gun, victim backed up and raised his hands, so nothing prevented defendant from leaving scene). Thus, even if the victim is the aggressor, the defendant is not free to escalate or continue the altercation by use of a deadly weapon on an unarmed victim, who is backing away and no longer presents a threat, and later claim self-defense. *Id.* at 542, 53 A.3d at 746. As the *Mouzon* Court observed, the shooting itself "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." *Id.* at 549, 53 A.3d at 751. To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the shooting, before the defendant can be excused from using deadly force. *Id.* (emphasis added). In other words, when the victim attempts to flee but the defendant continues the altercation, the defendant becomes the aggressor and is not acting in self-defense. *Commonwealth v. Butler*, 516 Pa. 522, 533 A.2d 992 (1987).

Likewise, the Commonwealth can negate a self-defense claim by proving the defendant "used more force than reasonably necessary to protect against death or serious bodily injury." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super.2012) (*en banc*). Furthermore, the defendant's duty to retreat includes the responsibility to avoid the danger if possible. *Sepulveda, supra*. The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa.Super.2000), *appeal denied*, 566 Pa. 657, 782 A.2d 542 (2001).

When the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the jury's disbelief of the defendant's testimony:

The "disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact." The trial court's statement that it did not believe Appellant's testimony is no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim.

*Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa.Super.2003) (quoting *Torres, supra*). If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to "reject or accept all, part or none of the testimony of any witness." *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 609 A.2d 1368, 1370 (1992). *See also Commonwealth v. Hall*, 574 Pa. 233, 242, 830 A.2d 537, 542–43 (2003) (holding defendant's own testimony that shooting was accidental was ineffective, because there was adequate circumstantial evidence to prove he pointed gun in direction of victim and discharged it). "Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa.Super.2008). A jury may properly reject a defendant's self-defense claim even if the victim was in possession of or appeared to be reaching for a weapon. *See Commonwealth v. Jones*, 886 A.2d 689 (Pa.Super.2005), *appeal denied*, 587 Pa. 686, 897 A.2d 452 (2006).

Moreover, "Not all errors at trial, however, entitle an appellant to a new trial, and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial...." *Commonwealth v. Reese*, 31 A.3d 708, 719 (Pa.Super.2011) (*en banc* ).

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Ballard, supra* at ——, 80 A.3d at 398–99.

Finally, to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings. *Commonwealth v. Shamsud–Din*, 995 A.2d 1224, 1228 (Pa.Super.2010) (stating, "in order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue"). Significantly:

Issue preservation and presentation requirements are enforced in our system of justice for principled reasons, ..., as they facilitate the open, deliberate, and consistent application of governing substantive legal principles from the foundation of a case through its conclusion on appellate review. Loose shifting of positions after the entry of judgments by those challenging them disrupts the stability and predictability of the process, fostering the potential for unfairness.

*Anderson v. McAfoos,* 618 Pa. 478, 492, 57 A.3d 1141, 1149 (2012). The party challenging the judgment bears the threshold burden on issue preservation. *Id.* at 496, 57 A.3d at 1152. "[I]f there is some question in the mind of a proponent's attorney, he can as much file a motion *in limine* to obtain clarification as can opposing counsel." *Id.*

Instantly, the Commonwealth filed a motion *in limine* to preclude admission at trial of Mr. Purdy's BAC results. In answer to the motion, Appellant averred: "The alleged victim's aggression towards [Appellant] is both relevant and material to [Appellant's] action on the day of this incident. Alcohol intoxication, by its very nature, affects the personality of the intoxicated party, causes [one] to engage in risky or potentially dangerous behavior that they would not otherwise engage in, and reduces the cognitive functional ability and decision making process. Based on all of those factors, the fact that the victim's B.A.C. at the time of the incident was .15[6] should ultimately be considered by the jury." (*See* Defense Answer to Commonwealth's Motion *in Limine,* filed 11/10/10, at ¶ 11.) Notably, Appellant did not argue Mr. Purdy's BAC was admissible to impeach his recollection of the events, which led to the shooting.

On November 5, 2010, Appellant filed his own pre-trial motion seeking (1) to preclude the Commonwealth from producing evidence at trial through its medical expert that Mr. Purdy had developed a life-threatening blood clot in his injured leg; (2) to compel production of the Commonwealth's expert's *curriculum vitae* and report; (3) to compel production of the 911 recordings from the incident; (4) to preclude all use of the "loaded language" of "victim" or the phrase "crime scene" as unduly prejudicial to the defense. Again,

Appellant failed to raise the impeachment claim.

By order dated December 3, 2010, and filed December 6, 2010, the trial court granted the Commonwealth's motion *in limine,* and by separate order dated and filed on the same date, the court denied Appellant's pre-trial motion to preclude at trial any evidence of Mr. Purdy's blood clot and to exclude the use of "loaded language" such as "the victim" and "the crime scene." The court granted Appellant's motion to compel the Commonwealth's expert report and the 911 recordings of the incident.

On January 14, 2011, Appellant filed a motion for reconsideration of the court's first order of December 6, 2010. In the motion for reconsideration, Appellant raised **for the first time** that the court should admit Mr. Purdy's BAC as relevant, material evidence calling "into question his credibility, perception, and intent and therefore must be considered by the jury to ensure that any adjudication is fair, accurate, and reliable[.]" Appellant also argued for the first time that preclusion of this evidence violated "both substantive due process and also the accused's right of confrontation." (*See* Motion to Reconsider, filed 1/14/11, at ¶ 2.) On March 1, 2011, the court denied Appellant's motion to reconsider. Notwithstanding counsel's persistence in again asking the trial court to admit Mr. Purdy's BAC results at trial, the court refused to overrule the prior court's decision, simply based on counsel's revised arguments. In my opinion, Appellant's failure to raise the impeachment argument in his response to the Commonwealth's motion *in limine* on the very subject of the admissibility at trial of Mr. Purdy's BAC results, in Appellant's own pre-trial motion, or in a separate motion *in limine* before the court ruled on the topic, constituted waiver. I do not think Appel-

lant's loose shifting of his position in a motion for reconsideration was the appropriate stage of the proceedings to preserve the claim, particularly where the trial court had already ruled on the topic. Despite arguable waiver of the issue, I hesitate to end the inquiry on that note.

With respect to the relevance/prejudicial impact of the BAC evidence, the trial court in pertinent part reasoned:

> The court did not err by excluding Mr. Purdy's BAC because the evidence was not relevant to either the charges against or defenses raised by [Appellant.] Furthermore, even if the evidence was relevant it was inadmissible because its probative value was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.
>
>   \*   \*   \*
>
> [Appellant] here was charged with and convicted of aggravated assault ... and recklessly endangering another person.... ... [Mr. Purdy's] BAC has no bearing on the matter under inquiry. It does not tend to prove or disprove whether [Appellant] "intentionally, knowingly, or recklessly attempted to cause serious bodily injury under the circumstances manifesting extreme indifference to the value of human life." Nor does it tend to make a material fact more or less probable. Furthermore, at the time of the shooting, [Appellant] had no knowledge of whether Mr. Purdy was or was not intoxicated therefore it is difficult to imagine a situation, given the circumstances here, in which [Appellant's] intent could have been based on whether Mr. Purdy was or was not intoxicated.
>
> [Appellant] also argued that [Mr. Purdy's] BAC was relevant to his defense of himself and his family.... Once again [Mr. Purdy's] BAC has no bearing on the matter under inquiry. It does not tend to prove or disprove whether [Appellant] believed that the use of force was immediately necessary for the purpose of protecting himself against the use of unlawful force. Nor does it tend to make a material fact more or less probable. Furthermore, at the time of the shooting [Appellant] had no knowledge of whether Mr. Purdy was or was not intoxicated therefore it is difficult to imagine a situation, given the circumstances here, in which [Appellant's] "belief" could have been based on whether Mr. Purdy was or was not intoxicated.
>
>   \*   \*   \*
>
> [Appellant] also argued that Mr. Purdy's BAC should be admissible because it [affects] his credibility as a witness. [Appellant] contended that testimony of two [independent] eyewitnesses could contradict Mr. Purdy's testimony and that [Appellant] should be able to offer the BAC as a possible explanation of Mr. Purdy's inconsistencies. It is true that evidence of a witness' consumption of alcohol can be relevant if it affects credibility.... But, once again even if Mr. Purdy's BAC could be relevant to his credibility and somehow make an element of [Appellant's] crime more or less likely, this general rule is subject to a weighing of its probative value versus its prejudicial effect.
>
> Again, we think the prejudicial impact of admitting the BAC outweighed its probative value based on Mr. Purdy's credibility. We felt the testimony of [the independent] two witnesses sufficient to highlight any inconsistency in Mr. Purdy's version of the events.
>
> Furthermore, this court felt that introducing evidence of Mr. Purdy's BAC would only confuse the issue for the

jury. The issues in this case were criminal in nature. . . .

Therefore, the admission of Mr. Purdy's BAC as evidence was denied because it was not relevant to the crimes charged and because alternatively, assuming that it was relevant to . . . attack credibility, its probative value was outweighed by its prejudicial effect and would only serve to confuse the jury.

(Trial Court Opinion, filed June 22, 2011, at 2–9). Evidence of Mr. Purdy's BAC results was not relevant to Appellant's self-defense claim for several reasons. First, to the extent Mr. Purdy's intoxication might affect Appellant's reasonable belief that he was entitled to defend himself, there is no evidence Appellant knew Mr. Purdy was inebriated when the shooting occurred. Rather, not until after the shooting did the hospital tests reveal Mr. Purdy was legally intoxicated. Appellant's lack of knowledge of Mr. Purdy's condition when Appellant shot him undermined the probative value of the BAC results with respect to Appellant's claim of self-defense. In other words, the circumstances presented to Appellant at the time of the shooting did not include Mr. Purdy's condition or BAC results; therefore, neither was a factor in Appellant's decision to shoot or relevant to Appellant's claim of self-defense.

Moreover, the potential prejudicial impact of this evidence was substantial. Drunk driving carries undisputed negative societal perceptions, so the BAC results had a high potential for misleading the jury to a decision on an improper basis. *See* Pa.R.E. 403. As a result, I think the court correctly excluded evidence of Mr. Purdy's BAC on that basis.

To the extent Mr. Purdy's intoxication at the time of the events in question might be relevant to question his perception and recollection, the prejudicial effect considerably outweighed its probative value.[2] Appellant sought to introduce evidence of Mr. Purdy's BAC primarily to support Appellant's contention that Mr. Purdy was "acting crazy" and had threatened Appellant in such a significant way that Appellant was in reasonable fear for his life. The BAC evidence was ruled inadmissible on this basis. Appellant's alternative attempt to offer Mr. Purdy's BAC results for a narrow purpose—to impeach Mr. Purdy's recollection of the incident—would place otherwise inadmissible evidence in front of the jury for a very limited form of impeachment on what were actually minor details of the incident. *See Commonwealth v. Green,* 290 Pa.Super. 76, 434 A.2d 137, 141 (1981) (stating party may not use impeachment as pretext to place prejudicial evidence before jury). Evidence of Mr. Purdy's BAC would doubtlessly raise

---

2. *Commonwealth v. Boich,* 982 A.2d 102 (Pa.Super.2009) (*en banc*) does not alter my conclusion here. *Boich* addressed an entirely separate issue—whether a rape victim who had been drinking on the night of her assault and had some trouble remembering details of that offense could be subjected to an involuntary psychiatric examination for the purpose of determining her competency to testify. This Court reversed the trial court's order compelling the involuntary psychiatric examination of the complainant, holding her inability to recall certain facts about the alleged incident was an issue for the finder of fact. Our comments in *Boich* regarding intoxication evidence served to illustrate our ultimate holding that intoxication alone cannot serve as a basis to order an involuntary psychiatric examination to challenge a witness' competency. *Boich* does not have the sweeping effect that intoxication evidence is at all times admissible to impeach credibility. Nothing in *Boich* altered the well-established rule that all matters of relevance remain subject to the balancing test of Rule 403. *See Commonwealth v. Rouse,* 782 A.2d 1041, 1046 (Pa.Super.2001) (holding evidence relevant to impeach may be excluded if probative value is outweighed by danger of unfair prejudice).

a substantial risk that the jury would base its verdict on generalized inferences regarding drunk driving and intoxication. For this reason, Mr. Purdy's BAC, as it bears on his ability to testify accurately about the shooting, although minimally probative, was highly prejudicial.[3] Therefore, the court acted well within its discretion when it excluded this evidence under Rule 403. *See Parker, supra.* The trial court did not come to its decision lightly, and we have no right to usurp that task. *See id.*

With respect to Appellant's examples of how he could have used Mr. Purdy's BAC results to impeach his testimony, the trial transcript makes clear: whether Mr. Purdy left his vehicle once before at an earlier time—Appellant said he did not see Mr. Purdy do that (N.T. Trial, 3/8/11, at 258); whether Appellant was applying his brakes while driving—Appellant admitted he had been driving too fast because he thought Mr. Purdy was tailgating him, but decided to slow down and maintain the speed limit in order to make the car behind him slow down also (*Id.* at 253–54), and Appellant said he slowed down to 30–40 mph, and to make Mr. Purdy slow down (N.T. Trial, 3/9/11, at 356, 365); whether Mr. Purdy was angry at the time of the confrontation—Mr. Purdy admitted he was angry when he eventually confronted Appellant

(*Id.* at 140). Testimony from the independent eyewitness, Bertha Graves, corroborated Mr. Purdy's testimony that as he approached Appellant's car, Mr. Purdy had his hands in the air, palms out. (*Id.* at 148).

Significantly, Appellant's own trial testimony defeated his self-defense claim because his testimony established he was the one who escalated the aggression, used more force than necessary, and could have safely avoided the confrontation in the first place. Specifically, Appellant testified at trial that when he got out of his car, he already had his gun with him. (*Id.* at 267). Appellant testified that when he shot at Mr. Purdy, Mr. Purdy was about eight feet away from Appellant. (*Id.* at 281, 332). Appellant admitted he opened fire on Mr. Purdy. (*Id.* at 318). Appellant said he simply "forgot" he had a cell phone, but he remembered to use it after he shot Mr. Purdy to call 911. (*Id.* at 272, 326–27).

Appellant also admitted he could have turned off the highway, but he decided against that maneuver. (*Id.* at 326). Appellant further admitted he could have just stayed in his car and driven away, and it would all have been over. (*Id.* at 340). He said, "I could have just kept on going." (*Id.*) Instead, Appellant decided to confront Mr. Purdy with a gun. (N.T. Trial,

---

**3.** There is a distinct difference between using intoxication evidence to substantiate Appellant's self-defense claim and using it to impeach Mr. Purdy's recollection of the event. If used to substantiate Appellant's claim Mr. Purdy was "acting crazy," Appellant's position goes directly to his self-defense claim, not to Mr. Purdy's recollection, and serves only to support Appellant's assertion of his reasonable belief that he needed to use deadly force to defend himself. Further, even if Mr. Purdy had been "acting crazy," nothing of record justified Appellant's escalation of force by shooting Mr. Purdy with a gun. I think the court rejected the BAC evidence as unduly prejudicial and properly excluded it at trial.

More importantly, this case did not turn solely on Mr. Purdy's recollection. The jury heard other eyewitnesses' versions of events (*i.e.,* this case was not a "he said/he said" case). The central issue here for Appellant was his self-defense claim—whether he was the aggressor, whether he had a reasonable belief that he was in danger of death or serious bodily injury to justify his use of deadly force against Mr. Purdy, and whether Appellant violated his duty to retreat or avoid the confrontation. Mr. Purdy's recollection had little bearing on Appellant's state of mind as it related to his self-defense claim.

3/8/11, at 266–67). To me, Appellant's testimony alone was sufficient to call into question his claim of self-defense. Thus, any error in precluding Mr. Purdy's BAC at trial was harmless. In my opinion, there is no realistic probability that the outcome of the proceedings would have been different or any reason on the ground asserted to lose confidence in the jury's verdict. *See Ballard, supra.* Hence, I dissent.