J-S03026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON JOSEPH TAYLOR | : | |
| | : | |
| Appellant | : | No. 956 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Forest County Criminal Division at
No(s):  CP-27-CR-0000099-2018

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:               **FILED FEBRUARY 28, 2020**

Jon Joseph Taylor (Appellant) appeals from the judgment of sentence entered in the Forest County Court of Common Pleas, following his jury conviction of aggravated assault[1] and related offenses.  He avers: (1) the court erred in precluding evidence of the victim's cocaine use; and (2) the Commonwealth failed to disprove his claim of self-defense.  We affirm.

The charges arise from Appellant's non-deadly shooting of Brandon Hoffmeister (the victim).  We review the pertinent evidence presented at trial. On the weekend of August 3, 2018, approximately 14 people gathered at a "camp," owned by Appellant's wife and her sister, for a bachelor party for

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(1).

Appellant's nephew.[2] N.T. Trial, 4/10/19, at 281. The victim, a childhood friend of Appellant's nephew, was a guest. *Id.* at 197.

The victim brought his .45 caliber Ruger gun to the bachelor party, in anticipation of target shooting, and briefly had it out. N.T. at 202-03. However, when the victim was informed there would be no target shooting, he returned the gun to its case, placed it in the trunk of another guest's car, and did not take it out again. *Id.* At trial, the victim acknowledged that on that Friday evening, he was "pretty drunk." *Id.* at 218-19. We note that he and another guest, Casey O'Toole, had several arguments and a physical altercation, and other guests interceded to pull them apart. *Id.* at 219, 261.

The next afternoon, Saturday, August 4, 2018, Appellant, the victim, and others drank beer and alcohol. N.T. at 222, 286. For dinner, a group, including Appellant and the victim, went to a bar, where they consumed more alcohol and stayed until 2:00 a.m. *Id.* at 223-24. Upon return to the camp, the group continued to consume alcohol. *Id.* at 224.

Appellant testified to the following: at some point in the early morning hours, he observed the victim urinating in the indoor shower. N.T. at 291. Appellant became enraged and ordered the victim to leave the camp cabin. However, he told the victim to stay on the porch because no one could take him home. *Id.* Other party-goers were on the porch, and when Appellant

---

[2] At the time of the April 10, 2019 trial, Appellant was 53 years old; his nephew was 31 or 32, and the victim was 31. N.T. at 232, 280, 307.

told them what happened, the victim denied it. *Id.* at 292. The victim "started jawing at" him, and Appellant "jawed at him back." *Id.* at 292. The victim then charged Appellant, but the other men stopped him. *Id.* at 292-93. Appellant believed he then "went to bed." *Id.* at 293.

Later, Appellant went outside "to go to the bathroom."[3] N.T. at 293. The victim was on the porch and again "start[ed] yakking at" and cursing at Appellant, and Appellant responded in kind. *Id.* The victim again charged Appellant, but none of the other attendees stopped the victim. *Id.* at 293-94. Although Appellant ducked, the victim "pound[ed him] on the back of the head two or three times," at which point the victim them fell off the porch, but continued threatening Appellant. *Id.* at 294-95. Appellant stated, "I can't do this all night. I am going to go get my .38 so I can go to bed." *Id.* at 295. The victim responded, "[Y]ou better, mother fucker, because I have my .45." *Id.* Appellant knew the victim brought his gun to camp, believed he currently had it on his person, and felt "really scared." *Id.* at 295-96. Appellant thus intended to retrieve his own gun from his truck and "go to bed;" he testified, "I just thought that threat of me having it would be enough to calm things down." *Id.* at 296. Appellant explained he could not drive away because he had consumed alcohol; he also stated he did not know why he did not call the police for help. *Id.* at 296-97.

_____

[3] Appellant did not explain why went outside to "go to the bathroom." *See* N.T. at 293.

- 3 -

Appellant then walked to his truck, retrieved his gun, and closed the door. N.T. at 297. The "next thing [Appellant] knew," the victim was attacking him and "swinging at" him. *Id.* at 297-98. Appellant commanded him, "[D]on't touch me[,] Get away from me," but the victim did not stop. *Id.* at 299. Appellant fired his gun once, shooting the victim. *Id.*

The bullet travelled through the victim's neck, exiting through his upper back. N.T. at 213. However, the victim remained conscious and survived. *Id.* at 101. When Pennsylvania State Troopers arrived at the scene, Appellant was cooperative and admitted he shot the victim. *Id.* at 104.

Appellant was charged with attempted homicide,[4] two counts of aggravated assault,[5] simple assault, and recklessly endangering another person[6] (REAP). The Commonwealth filed a motion *in limine*, seeking, in pertinent part, to exclude evidence the victim ingested cocaine during the bachelor party, on the ground it was prejudicial. Appellant objected. Following a hearing on April 4, 2019, the court granted the Commonwealth's request, precluding any testimony concerning the victim's alleged cocaine use. The court did, however, allow Appellant to testify to the victim's intoxication, as well as his behavior, temperament and the observable effects of said

---

[4] 18 Pa.C.S. §§ 901(a), 2501(a).

[5] 18 Pa.C.S. § 2702(a)(1), (4).

[6] 18 Pa.C.S. §§ 2701(a)(2), 2705.

intoxication.

The case proceeded to a jury trial on April 10, 2019. The victim testified he did not recall some events of the bachelor party weekend, but generally did not dispute Appellant's account of events.[7] Appellant proceeded on a theory of self-defense; he testified as summarized above and presented another guest, Chad McDowell, who described the victim's alterations with O'Toole on Friday night.

The jury found Appellant guilty of one count of aggravated assault, simple assault, and REAP.[8] On May 31, 2019, the trial court imposed a sentence of 60 to 120 months' imprisonment on the aggravated assault conviction.[9] Appellant did not file a post-sentence motion, but took this timely appeal. He has complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents two issues for our review:

1. Whether the Court of Common Pleas erred in granting the Commonwealth's Motion *In Limine* excluding testimony of the victim's continuous use of cocaine and attendant violent behaviors adding to . . . Appellant's reasonable belief he needed to act in

---

[7] While Appellant testified he **believed** the victim had the gun on his person, the victim testified his gun was in fact in the trunk of a car the entire weekend. N.T. at 203, 296. There was no testimony from any witness that at the time of the shooting, the victim possessed, produced, or brandished his firearm.

[8] The jury found Appellant not guilty of attempted homicide and the second count of aggravated assault.

[9] The simple assault and REAP convictions merged for sentencing purposes. The court also ordered Appellant to pay restitution of $102,526.50 to "UPMC." Sentence, 5/31/19, at 1.

self-defense?

2. Whether the Court of Common Pleas erred in determining the jury's verdicts were based on sufficient evidence when the Commonwealth failed to disprove . . . Appellant's self-defense claim beyond a reasonable doubt?

Appellant's Brief at 2.

In his first issue, Appellant avers the trial court erred in granting the Commonwealth's motion *in limine*, precluding evidence that the victim ingested cocaine at the bachelor party. Appellant claims this evidence was "minimally prejudicial" to the victim's reputation, but probative of Appellant's claims that the victim was the aggressor and exhibited a pattern of violence, and that Appellant reasonably feared the victim. Appellant further reasons that preclusion of the victim's cocaine use bolstered the Commonwealth's argument that the victim was merely a "drunken fool" and "simply so drunk that he could not have been a threat." Appellant's Brief at 14-15. No relief is due.

We note the relevant standard of review:

Admission or exclusion of evidence at trial rests within the discretion of the trial court. We will not reverse the trial court's decision absent an abuse of that discretion. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."

***Commonwealth v. Williams***, 91 A.3d 240, 242 (Pa. Super. 2014) (*en banc*) (citations omitted). While all relevant evidence is generally admissible, a "court may exclude relevant evidence if its probative value is outweighed by

- 6 -

a danger of . . . unfair prejudice." Pa.R.E. 402, 403.

Here, the trial court precluded evidence of the victim's cocaine use at the bachelor party upon finding it "would be highly prejudicial" and "impermissible reputation evidence." Trial Ct. Op., 9/26/19, at 3. However, the court specifically ruled evidence regarding the victim's behavior was admissible, and Appellant could — and did — testify as to the victim's intoxication and aggressive conduct. The court pointed out:

> [Appellant] was freely permitted (and did) make it clear to the jury that the victim was not only intoxicated but highly aggressive. Whether that intoxication was caused by alcohol or drugs is irrelevant. [Appellant] was in no way unfairly prejudiced nor was the jury unjustly kept in the dark as to the actual facts of the case by the Court excluding any mention of cocaine.

*Id.* at 5.

Appellant does not address, or dispute, the trial court's reasoning that he was permitted to — and did — present extensive testimony concerning the victim's intoxication and resultant aggressive behavior on the night of the shooting. Instead, he argues the victim's cocaine use would have shown, specifically, the escalation in the victim's aggressive behavior and the reasons why Appellant was in such fear of him. *See* Appellant's Brief at 13. This argument ignores, however, that Appellant testified the victim's aggression escalated throughout the night, and furthermore that Appellant believed the victim had his gun on his person when the victim threatened, "You better, mother fucker, because I have my .45." *See* N.T. at 295-96 ("This is probably the second or third time [the victim] came at me. But, this is the first time

- 7 -

he actually got physical with me."). We find no abuse of discretion in the court's ruling. **See Williams**, 91 A.3d at 242. We agree the preclusion of evidence did not prejudice Appellant nor prevent him from establishing, at trial, his fear of the victim or the victim's escalating aggressive behavior.

In his second claim, Appellant argues the Commonwealth failed to disprove his claim of self-defense and thus the evidence was insufficient to support the jury's guilty verdicts. Appellant maintains he established he reasonably feared the victim, and thus his use of deadly force was justifiable. In support, Appellant cites the victim's attack on O'Toole earlier that weekend and three separate assaults on Appellant, as well as Appellant's own "older" and "more debilitated" physical condition. Appellant's Brief at 21-22. Appellant recounts his trial testimony that: (1) when he went outside to urinate, the victim charged at him and pummeled him in the back of the head; (2) fearing the victim, Appellant announced he would get his .38 caliber gun, but the victim responded, "[Y]ou better, mother fucker, because I have my .45;" (3) "with a potential threat to his life looming," Appellant then "rushed to his truck to retrieve his pistol;" (4) the victim punched him at his truck; and (5) when the victim ignored Appellant's "pleas to stop," Appellant "pulled up and quickly shot at" him.[10] **Id.** at 20-22. We disagree.

---

[10] Appellant further asserts he "had the fundamental right to defend himself on his own family's property." Appellant's Brief at 23. However, he does not aver, and we find no indication in the record, that he presented this discrete legal theory before the trial court. Accordingly, we do not review it. **See** Pa.R.A.P. 2117(c) (where issue is not reviewable on appeal unless raised or

We note:

> We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." . . . [T]he trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citations omitted). Furthermore,

> When one employs deadly force . . . the elements of a claim of self-defense are that the individual (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. . . . 18 Pa.C.S § 505(b)(2) [(use of force in self-protection)].
>
> A defendant does not have a burden to prove a claim of self-defense. Once a defendant introduces some evidence to justify a finding of self-defense, then the issue is properly before the fact-finder and the Commonwealth bears the burden to disprove the defense beyond a reasonable doubt.

*Id.* at 640 (some citations omitted).

Here, the trial court correctly reasoned that the jury bore the responsibility of weighing the evidence, and it appropriately determined Appellant's use of deadly force was not justifiable. Trial Ct. Op. at 3. Again, we agree. In viewing all the evidence in the light most favorable to the

---

preserved below, appellant's statement of the case shall specify state of proceedings where issue was raised and way in which it was passed upon by trial court).

Commonwealth, the jury was free to find the Commonwealth disproved Appellant's self-defense claim beyond a reasonable doubt. *See Miller*, 172 A.3d at 640. Specifically, we note the evidence was sufficient for the jury to find Appellant violated a duty to retreat. Although Appellant testified that he could not simply drive away because he had consumed alcohol, he provided no explanation why he did not simply re-enter the camp and close the door, rather than walk off the porch and to his car to retrieve his gun. *See* N.T. at 296. Furthermore, when asked why he did not call 911 to report a man with a gun was attacking him, Appellant replied "To be honest with you, I don't know." *Id.* at 297.

Finally, the reasonableness of Appellant's belief is similarly a question to be decided by the finder of fact. Since there was no testimony that the victim possessed or brandished a firearm during any of the alleged multiple attacks on Appellant, we can hardly take issue with the jury's rejection of the proffered self-defense claim as justifiable. Appellant's arguments on appeal would require this Court to reweigh the evidence in his favor and supplant the jury's findings with our own; this we cannot do. *See Miller*, 172 A.3d at 640. We do not disturb the jury's verdict, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

Judge Pellegrini files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/28/2020