J-S48045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN J. SHERLOCK, | |
| Appellant | No. 2069 MDA 2013 |

Appeal from the Judgment of Sentence June 4, 2013
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000246-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN J. SHERLOCK, | |
| Appellant | No. 2070 MDA 2013 |

Appeal from the Judgment of Sentence June 4, 2013
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0001752-2012

BEFORE:   DONOHUE, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 03, 2014**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant, Kevin J. Sherlock, appeals from the judgment of sentence entered on June 4, 2013, following his jury conviction of two counts of recklessly endangering another person (REAP)[1] and one count of endangering the welfare of children (EWOC).[2] For the reasons discussed below, we affirm.

On January 24, 2012, the police arrested Appellant and charged him with REAP, simple assault,[3] and harassment.[4] The charges arose from a January 23, 2012 incident involving Appellant and his former girlfriend. On February 1, 2012, the magisterial district judge bound the charges over to the Court of Common Pleas. On September 20, 2012, the police arrested Appellant on new charges of EWOC, simple assault,[5] and REAP, arising from the same incident. Ultimately, the two informations were consolidated for trial. (**See** Notice of Consolidation, 11/08/12).

On November 30, 2012, Appellant filed a motion for appointment of a special prosecutor or, in the alternative, for re-assignment of the prosecutor. Appellant argued that it was improper to allow Assistant District Attorney

_____

[1] 18 Pa.C.S.A. § 2705.

[2] 18 Pa.C.S.A. § 4304(A)(1).

[3] 18 Pa.C.S.A. § 2701(a)(3).

[4] 18 Pa.C.S.A. § 2709(a)(1).

[5] 18 Pa.C.S.A. § 2701(a)(1).

Sean P. McGraw to prosecute the matter because, in 2004, when the Centre County Public Defender's Office employed him, Attorney McGraw represented Appellant in a burglary case. (*See* N.T. Motion Hearing, 12/03/12, at 3-4). The trial court denied the motion on December 3, 2012.

On January 21, 2013, the Commonwealth filed motions *in limine* to admit Appellant's juvenile adjudications and adult conviction of *crimen falsi*, namely fourteen juvenile adjudications for theft from a motor vehicle and certain adult convictions.[6] (*See* Commonwealth's Motions *in Limine*, 1/21/13, at 2-3). The Commonwealth also sought to preclude Appellant from making impermissible attacks on the character of the victim. (*See id.* at 3-5). Following oral argument on January 23, 2013, the trial court granted the Commonwealth's motions *in limine* with respect to Appellant's 2004 adult conviction of burglary, denied it with respect to all other adult convictions, and took the issue of the juvenile adjudications under advisement. (*See* N.T. Motion Hearing, 1/23/13, at 34). The trial court also granted, in part, the Commonwealth's motions *in limine* to preclude impermissible attacks on the victim's character, but did allow Appellant to introduce evidence that the victim had previously assaulted him, that she

_____

[6] We note that, based upon statements made during oral argument on the motions *in limine*, it appears that Appellant also filed a motion *in limine* regarding the admissibility of his prior adjudications and convictions. (*See* N.T. Motion Hearing, 1/23/13, at 3). However, that motion is not listed on the docket and we have been unable to locate it.

used racial slurs when referring to Appellant's current paramour, and that she received accelerated rehabilitation following a charge of driving under the influence. (**See** Commonwealth's Motions *in Limine*, **supra** at 5-6; N.T. Motion Hearing, **supra** at 35-36).

A jury trial took place on January 25, 2013. At trial, the victim testified that, soon after entering into a relationship with Appellant in the summer of 2010, she became pregnant. (**See** N.T. Trial, 1/25/13, at 48). However, the couple broke up in December 2011, when Appellant became involved with another woman. (**See id.** at 51-54).

On January 23, 2012, the victim drove their pick-up truck to Appellant's new residence so that he could visit with his son. (**See id.** at 56-58). Appellant got into the truck and sat in the back, because the baby was in the front in a car seat. (**See id.** at 60). The victim was driving the truck when the parties got into an verbal altercation. (**See id.**). The victim drove around the block, back to Appellant's residence, and told him to exit the truck; Appellant refused. (**See id.** at 61). The victim got back into the vehicle and began to drive to her residence, continuing to argue with Appellant. (**See id.** at 62-63). As they argued, Appellant grabbed the victim's right arm, pulled it towards the backseat, and jammed it between the front bucket seats of the truck, while trying to grab the keys from the ignition. (**See id.** at 63).

When the victim yelled that Appellant was breaking her arm, Appellant released it, but then reached from behind from the victim and put his hands over her mouth and nose; again trying to grab the keys from the ignition. (*See id.* at 64-65). As the victim continued to drive, Appellant hit her in the back of the head twice and hit her in the right eye. (*See id.* at 67-69). The two continued to argue and throw items out of the window of the truck. (*See id.* at 71-72). Ultimately, the victim stopped the truck, removed the infant, and was able to find a ride to her parents' residence. (*See id.* at 72-74).

Appellant sought to impeach the victim's testimony by introducing into evidence eight text messages sent by the victim to Appellant wherein she used racial slurs when referring to Appellant's new girlfriend, and stated that she was angry, bitter and jealous. (*See id.* at 104-12). The trial court allowed the use of three of the text messages but refused to admit the rest. (*See id.*).

Appellant testified in his own defense. (*See id.* at 169-246). In rebuttal, the trial court allowed the Commonwealth to introduce evidence of Appellant's 2004 adult burglary conviction and fourteen juvenile adjudications for theft from a motor vehicle. (*See id.* at 257-61).

Following trial, the jury found Appellant guilty of two counts of recklessly endangering another person and one count of endangering the

welfare of a child; it found Appellant not guilty of simple assault. The trial court found Appellant not guilty of harassment.

On June 4, 2013, the sentencing court sentenced Appellant to an aggregate term of incarceration of not less than twenty-two nor more than forty-eight months to be followed by one year of probation. Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence, which the trial court denied on November 13, 2013. Appellant filed the instant, timely appeal.[7]

On appeal, Appellant raises the following questions for our review:

I.    Did the [t]rial [c]ourt err in denying Appellant's [m]otion for [a]ppointment of a [s]pecial [p]rosecutor, or, in the alternative, [r]e-[a]ssignment of a [p]rosecutor?

II.   Did the [t]rial [c]ourt err in denying Appellant's [m]otion [*in limine*] and allowing rebuttal evidence of Appellant's [fourteen] juvenile adjudications on [t]heft from a [m]otor [v]ehicle and [two] juvenile adjudications for [c]riminal [c]onspiracy, which were all dated from over [ten] years ago, along with an adult conviction for [b]urglary?

III.  Did the [t]rial [c]ourt err in allowing the Commonwealth to read [o]rders of a [b]urglary conviction and [sixteen] juvenile adjudications into the record in rebuttal without laying a proper foundation?

_____

[7] Appellant filed a timely concise statement of errors complained of on appeal on December 5, 2013. *See* Pa.R.A.P. 1925(b). The trial court issued an opinion on December 19, 2013. *See* Pa.R.A.P. 1925(a).

IV.   Did the [t]rial [c]ourt err in refusing to permit the [j]ury to view and hear testimony regarding all text messages sent by [the victim] to Appellant?

V.   Did the [t]rial [c]ourt err in granting the Commonwealth's [m]otion [*in limine*] to [p]reclude [i]mpermissible [a]ttacks on the [c]haracter of [the victim]?

VI.   Did the [t]rial [c]ourt err in denying Appellant's [p]ost-[s]entence [m]otion with respect to the weight and sufficiency of the Commonwealth's evidence?

(Appellant's Brief, at 10-11).

In his first claim, Appellant alleges that the trial court erred in denying his motion for appointment of a special prosecutor[8] or, in the alternative, re-assignment of a prosecutor.   (*See* Appellant's Brief, at 23-26).   As discussed above, Appellant contends that A.D.A. McGraw had a conflict of interest because he previously represented Appellant in a burglary case and the Commonwealth used the fact of the burglary conviction to impeach Appellant at trial.    (*See* Appellant's Brief, at 23-24, 26; N.T. Motion Hearing, 12/03/12, at 3-4).).   This issue lacks merit.

When reviewing a trial court's order on a motion for disqualification of counsel, we employ a plenary standard of review.   *See Weber v. Lancaster*

_____

[8] We note that, at oral argument on Appellant's motion, Appellant withdrew his request for appointment of a special prosecutor and sought that the trial court order a different assistant district attorney be assigned to the matter. (*See* N.T. Motion Hearing, *infra* at 3).

- 7 -

***Newspapers, Inc.***, 878 A.2d 63, 80 (Pa. Super. 2005), *appeal denied*, 903 A.2d 539 (Pa. 2006).

Initially, we note that Appellant's argument is undeveloped because it is devoid of citation to relevant law and because he fails to explain the conflict of interest in this matter. (***See id.*** at 25-26). While Appellant claims that it was "all but certain that Attorney McGraw acquired confidential information while representing [Appellant] in his prior criminal case[,]" Appellant does not provide any examples of confidential information being used against him in the instant matter. (***Id.*** at 26). The record reflects that, at trial, the only use made of the 2004 conviction was that Attorney McGraw read a portion of the criminal information and a portion of the sentencing order, both matters of public record, to the jury. (***See*** N.T. Trial, 1/25/13, at 259-60). Thus, Appellant has not demonstrated that Attorney McGraw made use of any confidential information obtained during his representation of Appellant in a completely unrelated matter nearly ten years prior to the instant proceedings.

Moreover, Pennsylvania Rule of Professional Conduct 1.11 states in pertinent part:

> **Rule 1.11. Special Conflicts of Interest for Former and Current Government Officers and Employees**
>
> *     *     *
>
> (e) As used in this Rule, the term "matter" includes:

(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and

(2) any other matter covered by the conflict of interest rules of the appropriate government agency.

\*    \*    \*

EXPLANATORY COMMENT
[1] A lawyer who has served or is currently serving as a public officer or employee is personally subject to the Rules of Professional Conduct, including the prohibition against current conflicts of interests stated in Rule 1.7.  In addition, such a lawyer may be subject to statutes and government regulations regarding conflict of interest.

\*    \*    \*

 [4] This Rule represents a balancing of interests.  On the one hand, where the successive clients are a government agency and another client, public or private, the risk exists that power or discretion vested in that agency might be for the special benefit of the other client.  A lawyer should not be in a position where benefit to the other client might affect performance of the lawyer's professional functions on behalf of the government. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. **On the other hand, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government.  The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. Thus, a former government lawyer is disqualified only from particular matters in which the lawyer participated personally and substantially.**  The provisions for screening in paragraph (b) are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.  The limitation of disqualification in paragraphs (a)(2) and (d)(2) to matters involving a specific party or parties, rather

than extending disqualification to all substantive issues on which the lawyer worked, serves a similar function.

\* \* \*

[10] For purposes of paragraph (e) of this Rule, a "matter" may continue in another form. In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.

Pa.R.P.C. 1.11 (emphasis added). Thus, the rule is not client specific, rather it is case specific, and the issue is whether the current "matter" is the same or a continuation of the prior matter. Here, we have two entirely separate incidents, separated by a span of years. The record does not demonstrate any relationship between the 2004 burglary conviction and the instant matter. Thus, the trial court did not err in denying Appellant's motion for appointment of a special prosecutor or, in the alternative, re-assignment of a prosecutor. Appellant's first issue lacks merit.

In his second claim, Appellant avers that the trial court erred in granting the Commonwealth's motion *in limine* allowing rebuttal evidence of Appellant's fourteen juvenile adjudications for theft from a motor vehicle, two juvenile adjudications for criminal conspiracy, and one adult conviction for burglary.[9] (**See** Appellant's Brief, at 27-34).

_____

[9] While Appellant appears to claim in his statement of the questions involved and in the caption to his argument that the trial court wrongly admitted his adult conviction for burglary, he does not make any argument regarding the admissibility of this conviction in the body of his brief. (**See** Appellant's
*(Footnote Continued Next Page)*

A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. A trial court's decision to grant or deny a motion *in limine* is generally subject to an evidentiary abuse of discretion standard of review.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. . . . We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*(Footnote Continued)* ─────────────

Brief, at 10, 27-34). Because Appellant abandoned this claim, we find it waived. **See Commonwealth v. Jones**, 815 A.2d 598, 604 n.3 (Pa. 2002) (claims raised in the statement of questions involved but not pursued in the body of the brief are waived).

> To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Williams***, 91 A.3d 240, 248-49 (Pa. Super. 2014) (*en banc*) (quotation marks, indentations, and citations omitted).

This Court has held that evidence of character or a particular character trait is not admissible to prove that a defendant acted in accordance with that trait on a certain occasion. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1263 (Pa. Super. 2014). However, such evidence is admissible as *crimen falsi* evidence or as rebuttal of evidence of good character. ***See id.*** While Pennsylvania Rule of Evidence 609(a) provides that "evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, must be admitted if it involved dishonesty or false statement[,]" Pa.R.E. 609(a), it places limitations on those convictions, such as Appellant's juvenile adjudications,[10] which, in the instant matter, are over ten years old. ***See*** Pa.R.E. 609(b)(1).

With respect to the admission of a conviction outside the ten-year period, our Supreme Court has stated:

> the following factors should be considered by the trial court in determining whether previous convictions, which are outside the ten-year time frame, are admissible for purposes of impeachment: (1) the degree to which the commission of the

---

[10] Evidence of juvenile adjudications are admissible "if conviction of the offense would be admissible to attack the credibility of an adult." Pa.R.E. 609(d).

prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Rivera*, 983 A.2d 1211, 1227 (Pa. 2009), *cert. denied*, 560 U.S. 909 (2010) (citation and footnote omitted).

In the instant matter, the trial court, after noting the *Rivera* factors, stated its reasons for admitting the juvenile adjudications as follows:

In the instant case, the jury was required to make a credibility determination regarding [Appellant's] testimony. [Appellant's] prior crimes of *crimen falsi* were relevant to the jury's ability to make that determination. These crimes were distinct from the crimes for which [Appellant] was being tried, and gave no indication to the jury that [Appellant] had any propensity to commit crimes similar to the ones for which he was on trial. Additionally, it is presumed that the jury follows the instructions given by the trial court. *Commonwealth v. Housman*, 986 A.2d 822[, 837] (Pa. 2009)[, *cert. denied*, 131 S.Ct. 199 (2010)]. This [c]ourt gave the jury instructions that they were only permitted to consider [Appellant's] prior criminal record insofar as it affected his truthfulness, and were not to consider it as proof or evidence that he had a propensity to commit crimes.

Further, no other alternative methods for impeaching [Appellant's] credibility existed. [Appellant, the victim], and their infant son were the only witnesses to the incident which took place. Both [Appellant] and [the victim], testified, and the jury was forced to make a credibility determination as to their testimony. Had [the victim] also had a prior record of crimes of *crimen falsi*, this [c]ourt would have permitted its introduction

- 13 -

for impeachment purposes. This [c]ourt did not abuse its discretion in permitting [Appellant's] prior juvenile adjudications for crimes of *crimen falsi* to be admitted to impeach his credibility.

(Trial Court Opinion and Order, 11/13/13, at 11-12).

In **Rivera**, our Supreme Court specifically upheld the admission of *crimen falsi* convictions over ten years old in similar circumstances, where the defendant's credibility "was the crux of the case[,]" there was no alternative method for the Commonwealth to attack the defendant's credibility, and where the juvenile adjudications did not suggest a propensity to commit the crimes at issue. **Rivera**, **supra** at 1228-29. Given this, we find that the trial court did not abuse its discretion in admitting Appellant's juvenile *crimen falsi* adjudications. **See id.** Appellant's second issue lacks merit.

In his third claim, Appellant contends that the trial court erred in allowing the Commonwealth to read into the record Appellant's juvenile adjudications orders and an order of burglary conviction without laying a proper evidentiary foundation. (**See** Appellant's Brief, at 35-36). Appellant argues that, in order to admit the *crimen falsi* convictions, the Commonwealth was required to call as witnesses both the custodian of the records and one of the prosecutors from the prior cases. (**See id.** at 35). We disagree.

Our standard of review is well-settled; we may only reverse a trial court's ruling regarding the admissibility of evidence if the trial court abused

its discretion. *See Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa. Super. 2003), *appeal denied*, 845 A.2d 817 (Pa. 2004). The Pennsylvania Rules of Evidence provide that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Further, the Pennsylvania Rules of Evidence also state that certain documents are self-authenticating, including a certified copy of a public record. *See* Pa.R.E. 902(4).

Here, the Commonwealth admitted certified copies of three juvenile adjudication orders, one certified copy of Centre County Criminal Information 2004-53, and one certified copy of the sentencing order in that same case. (*See* N.T. Trial, 1/25/13, Commonwealth Exhibits 5-9). These records are self-authenticating. *See* Pa.R.E. 902(4). Thus, the trial court did not err in allowing the Commonwealth to read them into the record without calling as witnesses the custodian of the records or the prosecutors. Appellant's third issue lacks merit.

In his fourth claim, Appellant maintains that the trial court abused its discretion by refusing to allow into evidence all of the text messages sent by the victim. (*See* Appellant's Brief, at 37-40). Appellant states that these text messages were relevant to demonstrate the victim's racial hatred of Appellant's new girlfriend and "went directly to her bias, her motive, and her intent to fabricate these allegations against [Appellant]." (Appellant's Brief,

at 37). At trial, Appellant sought to introduce eight text messages between the victim and Appellant. (**See** N.T. Trial, 1/25/13, at 104-12). The trial court permitted the introduction of three of the messages dated January 21, 22, and 23, 2013, during which the victim stated, in pertinent part:

> Nop [sic]. Told ya [sic] if you stayed with that man monkey you couldn't see him and ya [sic] made your choice. And after today, I mean it when I say the next time you see him will be in court.
>
> *       *       *
>
> I loved you with all that I was. That's what makes me so angry and bitter. I'm jealous. Jealous of any woman you give your attention to and jealous of ppl [sic] who find a way through hard times we couldn't. I just want you to understand why I am so up and down. I'm done now. Have a good night.
>
> *       *       *
>
> there I go. Sending you too many texts that you don't care about or want. Sorry. Hard to break the habit of talking to you.
>
> God it's so fucking shitty to have you hate me and just ignore me. Really, I will try to control myself and stop. I'm being fucking pathetic.

(Defense Exhibits 5-7; **see also** N.T. Trial, 1/25/13, at 105-06). The trial court refused to admit the remaining five undated texts, which stated in pertinent part:

> I need you to get me but you're more interested in fucking your nigger.
>
> *       *       *
>
> Stayed with your slut last night?
>
> *       *       *

- 16 -

Now you speak like a nigger too?  I'm not "trippin" I'm telling you how it is and you don't want to hear it.

\*    \*    \*

. . . But I do not appreciate you leaving us stranded and shutting off your phone so you can forget about your child and fuck niggers.

\*    \*    \*

So you lied to me.  You're not working.

Good job.   Fuckin [sic] your nigger more important than spending time with your son?  You been caught.  Again.  Fucker.

Never allowed to see your son.  Ever.

(Defense Exhibits 8-12; **see also** N.T. Trial, at 107-10).  The trial court declined to admit these four texts because of the lack of date and time stamps, and because, with respect to Defense Exhibit 11, it appeared to be incomplete.  (**See** Trial Court Opinion and Order, 11/13/13, at 7-8).  The trial court did not admit Defense Exhibit 12, which was time and date stamped, because it appeared incomplete and because it was not part of the series of texts leading up to the events of January 23, 2012.  (**See id.** at 8).  Further, the trial court determined that these text messages "were needlessly cumulative and potentially more prejudicial than probative, as their admission could create the potential for the jury to improperly determine that [the victim] provoked [Appellant] into assaulting her, despite the fact that provocation is not a defense."  (**Id.** at 8-9).

The Pennsylvania Supreme Court has long stated that a trial court has the right to exclude evidence that is cumulative of other evidence. **See Commonwealth v. Chmiel**, 30 A.3d 1111, 1136 (Pa. 2011). Here, at trial, the victim testified on both direct and cross-examination that, she was jealous, angry and hurt that Appellant was seeing another woman, that she did not want this woman to have contact with their child, and that she called the woman derogatory names including, "nigger," and "fucking nigger." (N.T. Trial, 1/25/13, at 52-53, 56, 61, 63, 66, 84, 88, 98-99, 103-04). Thus, Appellant had ample opportunity to place before the jury evidence that the victim was angry with him, jealous of his new girlfriend, and did not like that his new girlfriend was African-American. The excluded text messages were cumulative of the victim's testimony. Thus, the trial court did not err in excluding them. Appellant's fourth issue lacks merit. **See Commonwealth v. Sattazahn**, 763 A.2d 359, 364-65 (Pa. 2000), *affirmed*, 537 U.S. 101 (2003) (trial court did not err in excluding evidence of police report wherein witness admitted he lied to police when defense counsel was able to cross-examine victim with respect to another police report that said same thing).

In his fifth claim, Appellant argues that the trial court erred in granting the Commonwealth's motion *in limine* to preclude impermissible attacks on the character of the victim. (**See** Appellant's Brief, at 41-42). Appellant claims that he should have been allowed to develop evidence regarding the

victim's history of mental illness, her cutting herself, her abuse of both legal and illegal narcotics, including her use of them in the child's presence, her involvement with Children and Youth Services, and past physical assaults on Appellant. (*See id.* at 41). Appellant explains that this evidence was relevant to show why he left the victim. (*See id.*). As discussed above, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard. *See Williams*, *supra* at 248.

In reviewing the admissibility of evidence with respect to a victim's character, the Pennsylvania Rules of Evidence state in pertinent part:

> **Rule 608. A Witness's Character for Truthfulness or Untruthfulness**
>
> **(a) Reputation Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.
>
> **(b) Specific Instances of Conduct.** Except as provided in Rule 609 (relating to evidence of conviction of crime),
>
> (1)  the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; . . . .

Pa.R.E. 608(a),(b)(1). This Court has stated, "instances of a victim's prior conduct are admissible to show a victim's character trait only if the trait in question is probative of an element of a crime or a defense."

*Commonwealth v. Minich*, 4 A.3d 1063, 1071 (Pa. Super. 2010) (citation

omitted). A panel of this Court gave the example of evidence of the victim's blood-thirsty character being admissible in a case where the defendant claimed self-defense. *See id.* at 1071-72. We further explained, "evidence relating to specific instances of a victim's prior conduct must be probative of the victim's conduct during the alleged criminal episode upon which the current charges are based." *Id.* at 1072.

Here, Appellant has not explained how the evidence discussed above was in any way related to the criminal episode at issue or was probative of an element of a crime or a defense. (*See* Appellant's Brief, at 41-42). In *Commonwealth v. Sasse*, 921 A.2d 1229 (Pa. Super. 2007), *appeal denied*, 938 A.2d 1052 (Pa. 2007), the trial court excluded evidence of a victim/witness' use of drugs and alcohol, sexual promiscuity, mental illness, and her father's criminal status, which the defendant had argued was relevant to his state of mind on the night of the incident. *See Sasse*, *supra* at 1238. We affirmed, stating that these traits of character were not pertinent to the incident in question and "their only purpose would be to attempt to paint [the victim/witness] in a negative light at trial and, therefore, to discredit her testimony improperly." *Id.* We see no difference between *Sasse* and the instant matter; thus the trial court did not abuse its discretion in precluding evidence of certain of the victim's character traits. *See id.* Appellant's fifth issue lacks merit.

In his final claim, Appellant challenges both the weight and sufficiency of the evidence. (*See* Appellant's Brief, at 43-45). Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted).

With respect to an appellant's sufficiency of the evidence claim, this Court has repeatedly stated that, when challenging the sufficiency of the evidence on appeal, the Appellant's Rule 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting *Commonwealth v. Flores*, 921 A.2d 517, 522-23 (Pa. Super. 2007)). Such specificity is of particular importance in cases where, as here, the jury convicted Appellant of multiple

- 21 -

crimes against two victims; and each of the crimes contains elements that the Commonwealth must prove beyond a reasonable doubt. *See id.* at 1258 n.9. In the instant matter, Appellant's Rule 1925(b) vaguely states "[d]id the [t]rial [c]ourt err in denying Appellant's [p]ost-[s]entence motion with respect to the weight and sufficiency of the Commonwealth's evidence[?]" (Concise Statement of Matters Complained of on Appeal, 12/05/13, at unnumbered page 2). It is thus impossible to determine from Appellant's vague 1925(b) statement, which convictions he seeks to challenge and the basis of that challenge. Accordingly, we find Appellant's sufficiency of the evidence claim waived.

Further, even if we did not find this claim subject to waiver for the reasons discussed above, Appellant's sufficiency of the evidence argument is underdeveloped. Appellant does not set forth the elements of the crimes that the jury convicted him of and does not set out the standard of review for sufficiency of the evidence claims. (*See* Appellant's Brief, at 43-45). Further, Appellant comingles his weight and sufficiency of the evidence claims. (*See id.*). His argument is generally devoid of both citations to the record and citation to relevant legal authority. (*See id.*). Accordingly, Appellant has waived his sufficiency of the evidence claim for this reason as well. *See Commonwealth v. Liston*, 941 A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in part*, 977 A.2d 1089 (Pa. 2009).

Even if Appellant had not waived this claim for these reasons, it would still be subject to dismissal. Appellant's sufficiency claim is, in essence, a claim that the jury rendered an inconsistent verdict. (***See*** Appellant's Brief, at 43-45). The Pennsylvania Supreme Court has held that "a mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." ***Commonwealth v. Magliocco***, 883 A.2d 479, 492 (Pa. 2005) (citation omitted); ***see also Commonwealth v. Rakowski***, 987 A.2d 1215, 1220 (Pa. Super. 2010), *appeal denied*, 9 A.3d 629 (Pa. 2010) (holding that an inconsistent verdict is not a basis for reversal).

Further, because the evidence against Appellant mainly consisted of the testimony of the victim, Appellant's claim is a contention that the jury should not have credited the testimony of the victim. However, an argument that the finder of fact could not have credited a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence. ***See Commonwealth v. W.H.M.***, ***Jr.***, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that jury should not have believed victim's version of events goes to the weight, not sufficiency of the evidence); ***Commonwealth v. Wilson***, 825 A.2d 710, 713-14 (Pa. Super. 2003) (holding that review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence); ***Commonwealth v. Gaskins***, 692 A.2d 224, 227 (Pa.

Super. 1997) (holding that credibility determinations are made by the finder of fact and challenges to those determinations go to the weight, not the sufficiency of the evidence). Accordingly, Appellant's sufficiency of the evidence claim fails. Next, we turn to a review of Appellant's weight claim.

Our scope and standard of review of a weight of the evidence claim is also long-settled:[11]

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial

---

[11] Appellant properly preserved his weight of the evidence claims in a post-trial motion. (***See*** Post-Sentence Motion, 6/14/13, at 7-8).

court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its opinion denying Appellant's post-sentence motion, the trial court explained why it rejected Appellant's weight of the evidence claim. (***See*** Trial Court Opinion and Order, 11/13/13, at 4-6). We have thoroughly reviewed both the trial court's opinion and the record in this matter and find that the trial court did not commit a palpable abuse of discretion in rejecting Appellant's weight of the evidence claim. Therefore, Appellant's weight of the evidence claim must fail.

Because Appellant's claims are meritless, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/3/2014