J-S19034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RICHARD SCHENCK, | : | |
| | : | |
| Appellant | : | No. 3523 EDA 2014 |

Appeal from the Judgment of Sentence November 6, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0011513-2012

BEFORE:  BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 25, 2016**

Richard Schenck ("Schenck") appeals from the judgment of sentence imposed following his conviction of simple assault, recklessly endangering another person ("REAP") and possessing an instrument of crime ("PIC").[1] We affirm.

The trial court summarized the history underlying the instant appeal as follows:

> On the afternoon of September 6, 2012, [James] Iyekekpolor ["Iyekekpolor"] was at the Frederick Douglas School, where his five[-]year[-]old daughter is a student.  The child's mother is Shakera Pritchett ["Pritchett"].  [] Pritchett is the girlfriend of Complainant, Theodore Long ["Long"].  [] Iyekekpolor had full custody of the child.
>
> Pritchett and Long arrived at the school to pick up the child.  Pritchett noticed [] Iyekekpolor's vehicle outside.  She entered the school[,] where she encountered [] Iyekekpolor. When [Iyekekpolor] saw Pritchett, he said[,] "Bitch, you're next"

---

[1] 18 Pa.C.S.A. §§ 2702, 2705, 907(a).

and started walking toward her. Pritchett left the school and walked toward Long, as [] Iyekekpolor followed. Long stepped between them and a "tussle" ensu[ed]. [] Iyekekpolor pulled out a knife and cut Long in the face, near his left eye.

[] Schenck[, Iyekekpolor's uncle,] then approached with an object that appeared to be a stick, but which proved to be a crowbar, which he swung, striking Long on the arm and Pritchett on the leg. Pritchett tried to pull Iyekekpolor off of Long, but she got hit in the head and recalls nothing after that. At some point[,] the knife was grabbed by Long, who used it against Iyekekpolor, before it was taken away from him. Long suffered cuts to his face, fractures to his skull, a fractured arm requiring surgical insertion of a rod, injury to his leg, a broken nose, fractured jaw, and multiple other cuts, contusions and abrasions. [] Iyekekpolor suffered multiple stab wounds to his left chest, left arm, left hand, right hand and left leg.

*      *      *

[] Pritchett identified [Iyekekpolor and Schenck] to the [police] officers as having attacked her boyfriend, [] Long….

Trial Court Opinion, 3/17/15, at 2-4 (unnumbered).

Following a jury trial, Schenck was convicted of the above-described charges. The trial court subsequently sentenced Schenck to a prison term of 2½-5 years for his conviction of PIC. For his conviction of simple assault, the trial court imposed a consecutive sentence of 1-2 years in prison. For his conviction of REAP, the trial court imposed a consecutive sentence of 1-2 years in prison. Thus, Schenck received an aggregate sentence of 4½-9 years in prison. Schenck filed a timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

- 2 -

Schenck presents the following claims for our review:

1. Did the Commonwealth fail to disprove beyond a reasonable doubt that [Schenck] was not justified in using force to protect himself or another person?

2. Did the [trial court] err in holding that Track 3 of the 911 tape was admissible as a present sense impression or an excited utterance?

3. Did the [trial court] err in holding that Track 3 of the 911 tape was admissible because its prejudicial effect outweighed its probative value?

4. Did the Commonwealth fail to prove beyond a reasonable doubt that the admission of Track 3 of the 911 [tape] was not harmless error?

Brief for Appellant at 4.

Schenck claims that through the testimony of the Commonwealth witnesses, during direct and cross-examination, he established the defenses of self-defense and defense of another. *Id.* at 15. Schenck asserts that the Commonwealth failed to disprove these defenses and, therefore, the evidence was insufficient to sustain his convictions. *Id.* According to Schenck, he was not party to the underlying dispute between Iyekekpolor and Pritchett. *Id.* at 17. Schenck directs our attention to Prichett's testimony that Schenck exited a vehicle after his nephew, Iyekekpolor, began fighting with Long. *Id.* at 18. According to Schenck, he interceded to protect Iyekekpolor. *Id.* Therefore, Schenck argues, he established the defense of justification by use of force pursuant to 18 Pa.C.S.A. § 506. Brief for Appellant at 18.

Schenck further argues that, "[o]nce engaged in the fight to protect Iyekekpolor, [Schenck] acted in self-protection and in defense of Iyekekpolor." *Id.* According to Schenck, he also established the defense of justification by use of force in self-protection pursuant to 18 Pa.C.S.A. § 505. Brief for Appellant at 18. Schenck acknowledges the testimony of Regina Anderson ("Anderson"), who gave a different account of the altercation. *Id.* However, Schenck asserts that Anderson was not present at the school when the incident began. *Id.* Therefore, Schenck argues, the Commonwealth failed to controvert Schenck's claim that he was absent when the altercation began. *Id.* at 19. On this basis, Schenck contends that the defense of justification was established. *Id.*

In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Bibbs*, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

*Id.* (citation and quotation marks omitted). The jury, as fact finder, is free to believe all, part or none of the evidence. ***Commonwealth v. Toland***, 995 A.2d 1242, 1245 (Pa. Super. 2010).

Regarding self-defense, the Pennsylvania Crimes Code provides, in relevant part, as follows:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person**.— The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a).

To prevail on a justification defense,

the defendant must show (1) he reasonably believed he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) he was free from fault in provoking the difficulty; and (3) he did not violate any duty to retreat.

***Commonwealth v. Spotz***, 84 A.3d 294, 317 n.16 (Pa. 2014) (citation omitted).

If the defendant properly raises self-defense, under section 505 of the Crimes Code, "the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." ***Commonwealth v. McClendon***, 874 A.2d 1223, 1229-30 (Pa. Super. 2005). The Commonwealth sustains this burden if it establishes at least one of the following: "1) the accused did not reasonably believe that he was in

danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." ***Commonwealth v. Williams***, 91 A.3d 240, 251 (Pa. Super. 2014) (citations omitted). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. ***Commonwealth v. Burns***, 765 A.2d 1144, 1149 (Pa. Super. 2000).

At trial, Pritchett testified that on September 6, 2012, at 3:45 p.m., she and her boyfriend, Long, drove to Frederick Douglas School to pick up her daughter. N.T., 5/13/14, at 49, 54. Pritchett described the altercation as follows:

> We pulled up. I noticed [Iyekekpolor's] truck was there. I went into the school. I seen him in the office talking to a [teaching assistant]. He had some type of paper in his hand, and he turned around and seen me, and he was like, "Bitch, you're next."
>
> So he started walking towards me, so I started walking out of the school as fast as I could, got out [of] the school and I seen [] Long, you know, I started walking faster. [] Long came in between me and [Iyekekpolor], and that's when [] Long and [Iyekekpolor] started to tussle back and forth. [Iyekekpolor] pulled out a knife, [] Long was stabbed on his face.
>
> The tussle went on. I tried to, you know, break it up. And [Iyekekpolor] started beatin' me. My shirt got cut. You know, two big guys trying to break it up. They go around the vehicle, [and] started fighting.
>
> The next thing you know, **[Long] was on the ground. I seen [Schenck] come out and he was swinging something, and that's when [] Long was on the ground**. I was on top of [Long] We were all like bunched up. I felt

- 6 -

something hit me in my leg, and I seen something hit [] Long on his shoulder ….

*Id.* at 55-56 (emphasis added).

Long testified that on September 6, 2012, he and Pritchett parked outside of Frederick Douglas School in order to pick up Pritchett's daughter. N.T., 5/14/14, at 54-55. Long stated that as Pritchett exited the school and walked toward the car, he saw Iyekekpolor approach Pritchett. *Id.* at 58. Long explained that he stepped between Pritchett and Iyekekpolor, at which time Iyekekpolor attacked him with his fists and a knife. *Id.* at 59-60. According to Long, Schenck approached the two fighting men and struck Long with a crowbar. *Id.* at 63.

Anderson testified that while waiting to pick up her daughters, she observed Iyekekpolor and Schenck jump out of their vehicle and begin beating Long. N.T., 5/14/14, at 26, 31. Anderson testified that the two men continued to beat Long after Long was on the ground. *Id.* at 33.

Viewed in a light most favorable to the Commonwealth, the evidence is sufficient to disprove Schenck's claims of self-defense and justification beyond a reasonable doubt. Specifically, the evidence is sufficient to establish that, while Long was on the ground, Schenck did not reasonably believe that Iyekekpolor was in danger of death or serious bodily injury; that Schenk had a duty to retreat; and, with Long on the ground, retreat was possible with complete safety. *See Williams*, 91 A.3d at 251. While some of the evidence conflicted, the jury was free to believe all, part or none of

the evidence. *See Toland*, 995 A.2d at 1245. Accordingly, we cannot grant Schenck relief on this claim.

Schenck next claims that the trial court improperly admitted the 911 recording of a female caller relaying information from a third person, under the present sense impression exception to the rule against hearsay. Brief for Appellant at 19. Schenck points out that in a recording identified as Track 3, the female caller is unidentified and not subject to cross-examination. *Id.* at 21. Schenck argues that the Commonwealth failed to establish

> (1) how much of her report was based on what she saw and how much was the result of what other unidentified people told her; (2) how far she was from the action; (3) how clearly she could see the action; (4) whether her view was obstructed or unobstructed; (5) whether or not she had a prescription for glasses; (6) whether she wore her glasses; and (6) what eye condition, if any, she had.

*Id.* at 20-21.

Schenck further argues that Track 3 is not admissible as an excited utterance, as the Commonwealth failed to prove that the caller was startled. *Id.* at 22. Schenk contends that the caller was not at the crime scene, but some distance away. *Id.* at 24. In addition, Schenck asserts that the Commonwealth failed to establish that the caller had firsthand knowledge of the events. *Id.* at 25.

In his third claim, Schenck argues that the trial court erred in admitting Track 3 of the 911 call because its prejudicial effect outweighed its

probative value. *Id.* at 26. In his fourth claim, Schenck argues that any error in the admission of Track 3 was not harmless. *Id.* at 27.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012) (citation and internal quotation marks omitted).

As this Court has explained,

[h]earsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. However, certain exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule.

*Commonwealth v. Kuder*, 62 A.3d 1038, 1055 (Pa. Super. 2013).

The excited utterance exception to the rule against hearsay applies when there is a "statement relating to a startling event or condition, made while the declarant was under the stress of the excitement that it caused." Pa.R.E. 803(2). There is no requirement that the statement describes or explains the startling event or condition, but it does have to relate to it. Pa.R.E. 803(2), cmt. Applying Rule 803(2), our Pennsylvania Supreme Court has stated that a statement, made under the following circumstances, is considered an excited utterance:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties…. **Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.**

*Commonwealth v. Sherwood*, 982 A.2d 483, 495-96 (Pa. Super. 2009) (emphasis added, citation omitted). "The crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id.*

Rule 803(1) permits the admissibility of a "present sense impression" as an exception to the rule against hearsay. A present sense impression is defined as "a statement describing or explaining an event or condition made **while the declarant was perceiving the event or condition**, or immediately thereafter." Pa.R.E. 803(1) (emphasis added). The "declarant need not be excited or otherwise emotionally affected by the event or condition perceived." Pa.R.E. 803(1), cmt.

At issue in this appeal is the trial court's admission of the 911 telephone call identified at trial as "Track 3," and designated as Trial Exhibit C-8. The content of Track 3 is as follows:

[Dispatcher]: Philadelphia Police.

[Caller]: Hi, um, I have a parent fight out at 22nd and Norris Streets. There are adults beating each other up outside.

[Dispatcher]: I'm sorry, what's going on?

[Caller]: Uh, there are adults beating each other up on the corner of 22nd and Norris. I'm calling from [inaudible] Frederick Douglas Charter School.

[Dispatcher]: Alright, we'll be out there as soon as possible.

[Caller]: There, the man is bleeding severely.

[Dispatcher]: Do you need an ambulance?

[Caller]: Yes, hopefully, yes.

[Dispatcher]: Hold on.

[Caller]: Three men, two men on one, and one female.

[Call is transferred to Fire Department Dispatcher]

[Dispatcher]: Philadelphia Fire Department [inaudible] what's the address?

[Caller]: Hi, uh, it's 2118 West Norris Street. There's a man severely beaten in the street, bleeding from the head.

[Dispatcher]: … West Norris Ma'am, or East Norris?

[Caller]: Yes. West Norris.

[Dispatcher]: He's outside?

[Caller]: Yes, he's outside on the street.

[Dispatcher]: Are they still going after him?

[Caller]: Uh, they just left. They just [] threw the weapon in the yard and left.

[Dispatcher]: Ok was it a shooting or a stabbing?

[Caller]: I don't know, it looked like um, **I saw them throw a metal rod in the field**.

[Dispatcher]: Alright, does the man appear to be moving at all?

[Caller]: He is moving, he's getting up, but his face is badly beaten.

[Dispatcher]: Alright, is anybody over there with him?

[Caller]: There's a female screaming. He's, he's disoriented, he's trying to stand up right now.

[Dispatcher]: Tell, tell her to keep him on the ground. Tell her not to try to get up and move him.

[Caller]: OK[,] I'm actually, I don't know that it's safe for me to go outside, um **I'm looking through a window right now**.

[Dispatcher]: Just tell her, tell her, tell the woman that is with him to keep him on the ground, not to move him, tell him not to try and get up. Somebody's on the way over, the more he moves the more likely he is to hurt himself.

[Caller is heard speaking to another person]

[Caller]: **He stabbed her. He stabbed her, so there's a knife involved.** Um, we're going to lock down our building, yeah, we're going to lock down our building, I don't think we need to let our students out. Ok, um ….

[Dispatcher]: Did you say he's armed with a knife?

[Caller]: Uh, there was a knife, **I just got a report that another observer saw a knife, so we need to lock down the building []**.

[Caller]: Um, I'm going to, do I need to stay on the phone with you?

[Dispatcher]: Not unless you want to, ma'am.

[Caller]: Ok, ok[,] I'm going to go take care of the kids. Thank you.

Trial Exhibit C-8 (admitted at N.T., 5/15/14, at 59) (emphasis added).

Our review of the record discloses that, contrary to Schenck's contention, the caller relayed her present sense impression of what was taking place outside of the window. Further, the events that were relayed by the caller were "sufficiently startling and so close in point of time as to render her reflective thought processes inoperable[,]" and that were "a spontaneous reaction to that startling event." **Sherwood**, 982 A.2d at 96.

In the above-quoted 911 telephone conversation, the caller made one statement referring to information relayed by a third person. Specifically, the caller referred to having received confirmation that a knife was involved in the altercation. Trial Exhibit C-8. Upon our review, we conclude that any error in the admission of this hearsay statement constituted harmless error.

As our Supreme Court has recognized,

[h]armless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hairston**, 84 A.3d 657, 671-72 (Pa. 2014) (citation omitted).

Here, the caller's mention of a knife was cumulative to the testimony of other, properly admitted evidence. **See** N.T., 5/14/14, at 28 (wherein Anderson testified as to the use of a knife during the altercation); **see also** N.T., 5/15/14, at 24 (wherein Detective Sean McCaffery testified that he found a knife in a vehicle at the scene), 29 (wherein Officer John Monahan ("Officer Monahan") testified that he observed cuts on Iyekekpolor), 34 (wherein Officer Monahan testified that a person at the scene directed him to the knife located in Iyekekpolor's vehicle). Further, the caller, herself, stated that a person had been "stabbed." Trial Exhibit C-8. Because the caller's relay of information regarding a knife was cumulative to other, properly admitted evidence, we conclude that any error in its admission was harmless. **See Hairston**, 84 A.3d at 671-72. Accordingly, we cannot grant Schenck relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2016