J. S11043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID HAYWOOD, | : | No. 2032 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered January 2, 2018,
in the Court of Common Pleas of Monroe County
Criminal Division at No. CP-45-CR-0000115-2016,

BEFORE: SHOGAN, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 09, 2020**

David Haywood appeals from the January 2, 2018 judgment of sentence[1] of three to six years' imprisonment and a $10,000 fine, imposed after a jury found him guilty of possession of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), possession of a small amount of marijuana, and possession of drug paraphernalia.[2] The

---

[1] In a **separate sentencing order** entered at No. CP-45-CR-0000876-2016, appellant was sentenced to five to ten years' imprisonment and a $30,000 fine, imposed after a jury found him guilty of PWID, possession of a controlled substance, possession of a small amount of marijuana, and three counts of possession of drug paraphernalia. The issues appellant raises with respect to No. CP-45-CR-0000876-2016 will be addressed at Superior Court Docket No. 2055 EDA 2019.

[2] 35 P.S. §§ 780-113(a)(16), (a)(30), (a)(31), and (a)(32), respectively.

trial court found appellant guilty of the summary offense of making an improper right turn.[3]  After careful review, we affirm.

The suppression court summarized the relevant facts of this case as follows:

> On the evening of November 27, 2015, Pennsylvania State Police Trooper [Leo] Petrucci was coming to a stop at the intersection of Knob Road and Pocono Boulevard (State Route 611) when [appellant] attempted a right turn from Pocono Boulevard onto Knob Road.  Trooper Petrucci's Mobile Vehicle Recording ("MVR") shows his patrol vehicle over the white stop line but behind the marked cross walk.  The MVR also shows Trooper Petrucci coming to an abrupt stop and immediately maneuvering his vehicle to the right.  At the hearing on [appellant's] motions [to compel discovery and suppress evidence], Trooper Petrucci testified credibly that these movements were in response to [appellant's] making the right turn too fast and too wide, nearly striking the forward portion of his patrol vehicle's driver door.  [Appellant] was unable to complete the right turn in that position so he backed up his vehicle onto Pocono Boulevard and then completed the turn.  While the MVR does not show [appellant's] vehicle during this incident, it does show another vehicle passing in front of Trooper Petrucci that was traveling behind [appellant] on Pocono Boulevard.
>
> Based upon this incident, Trooper Petrucci made a k-turn on Knob Road and followed [appellant], effectuating a traffic stop for Disregarding Traffic Lanes and Improper Right Turn.  Trooper MacMillian was situated just behind Trooper Petrucci on Knob Road so he, too, responded to the traffic stop to assist.
>
> Approaching [appellant's] vehicle, Trooper Petrucci saw that [appellant] was "doing something in his lap" and asked [appellant] to put his hands on the steering

---

[3] 75 Pa.C.S.A. § 3331(a).

wheel. Upon making contact with [appellant], Trooper Petrucci observed loose pieces of marijuana ("marijuana shake") and a bottle of air freshener in [appellant's] lap and smelled the strong odor of air freshener coming from the vehicle. At this point, Trooper Petrucci ordered [appellant] out of the vehicle. After questioning why he was being ordered out of the vehicle and receiving a response from Trooper Petrucci, [appellant] complied while continuing to answer Trooper Petrucci's questions. The MVR shows [appellant] exiting the vehicle, however, [appellant's] voice is low on the MVR audio recording and some of his responses to Trooper Petrucci's questions are indecipherable. Trooper Petrucci then asks for permission to search [appellant's] front pockets. [Appellant's] response is unclear on the MVR, however, Trooper Petrucci is heard saying "okay," and he then proceeds to search [appellant's] front pocket, finding a small bag of marijuana. Trooper Petrucci testified that [appellant] did, in fact, consent to the search and that he would not have conducted the search if [appellant] had not consented.

After discovering the marijuana, Trooper Petrucci immediately placed [appellant] under arrest. Trooper Petrucci handcuffed [appellant] and conducted a search of [appellant's] person incident to arrest. This search yielded a large sum of money[, $2,795.00,] and two bricks[Footnote 1] of heroin. The MVR shows that [appellant] was taken to Trooper Petrucci's patrol vehicle where he sat on the bumper and appeared to have trouble sitting up. Trooper MacMillian testified that [appellant] was "on the nod," which is indicative of narcotics use. After securing [appellant's] vehicle, Trooper Petrucci placed [appellant] in his patrol vehicle and transported him to the DUI Center. Before leaving, Trooper Petrucci read [appellant] his **Miranda**[4] rights and [appellant] stated that he understood these rights. During the drive to the DUI Center, [appellant] and Trooper Petrucci engaged in conversation. Most of the

---

[4] **Miranda v. Arizona**, 384 U.S. 436 (1966).

conversation consisted of [appellant] asking questions and Trooper Petrucci answering. However, Trooper Petrucci did ask how long [appellant] had been using drugs and inquired into [appellant's] preferred method of ingesting heroin, but [appellant's] responses on the MVR are inaudible. Trooper Petrucci testified that in a later interview at the Swiftwater Barracks, [appellant] stated he snorts 8 to 10 bags of heroin a day.

> [Footnote 1] According to Trooper Petrucci's testimony, a brick of heroin contains 50 individual packets – five bundles of ten packets are wrapped together to make a brick.

At the DUI Center, [appellant] was read his **O'Connell** warnings[5] and his blood was drawn. The results of [appellant's] DUI blood draw were positive for THC, a byproduct of marijuana use. Thereafter, Trooper Petrucci applied for a search warrant for [appellant's] vehicle based on the heroin, marijuana, and cash found on [appellant's] person. A search of [appellant's] vehicle yielded two additional bricks of heroin, a marijuana cigarette, and over $1,000 in cash.

Suppression court opinion, 5/19/16 at 1-3.

On February 26, 2016, appellant filed **omnibus** pretrial motions to compel discovery and to suppress the evidence obtained as a result of Trooper Petrucci's stop of his vehicle. Following a hearing, the suppression court denied appellant's motions on May 19, 2016. The Commonwealth's subsequent motion to consolidate Nos. CP-45-CR-0000115-2016 and CP-45-

---

[5] An **O'Connell** warning specifically informs a motorist that his or her driving privileges will be suspended for one year if he or she refuses chemical testing. **See Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873, 877 (Pa. 1989).

CR-0000876-2016 was denied by the trial court on November 15, 2016. On October 11, 2017, appellant proceeded to a jury trial and was found guilty of possession of a controlled substance, PWID, possession of a small amount of marijuana, possession of drug paraphernalia, and the summary offense of making an improper right turn.[6] On January 2, 2018, appellant proceeded to a sentencing hearing for both Nos. CP-45-CR-0000115-2016 and CP-45-CR-0000876-2016. (**See** notes of testimony, 1/2/18 at 27-33.) That same day, the trial court entered a separate sentencing order at No. CP-45-CR-0000115-2016, sentencing appellant to three to six years' imprisonment and a $10,000 fine. (Sentencing order "No. 115 Criminal 2016," 1/2/18.) Appellant filed timely, joint post-sentence motions for reconsideration of sentence and a new trial based on the weight of the evidence, which were denied by the trial court. Thereafter, appellant filed separate, timely notices of appeal at each docket number, listing both docket numbers on each.[7]

---

[6] The Commonwealth withdrew a driving under the influence charge prior to the commencement of trial. (**See** notes of testimony, 10/11/17 at 5.)

[7] The record reflects that on July 30, 2018, appellant complied with the trial court's order and filed a timely concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), for each corresponding docket number. On August 16, 2018, the Honorable Arthur L. Zulick ("trial court") entered an order indicating that he was relying on the reasoning set forth in his prior June 22, 2018 opinion that denied appellant's post-sentence motions. Subsequently, the Honorable Margherita Patti-Worthington ("suppression court") entered an order on August 17, 2018, indicating that she was relying on the reasoning set forth in her prior May 19, 2016 opinion that denied appellant's suppression motion.

Prior to consideration of the merits of this appeal, we must first address whether appellant's notice of appeal complied with the requirements set forth in the Pennsylvania Rules of Appellate Procedure and ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018). In ***Walker***, our supreme court provided a bright-line mandate requiring that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case," or the appeal will be quashed. ***Id.*** at 971, 976-977. The ***Walker*** court applied its holding prospectively to any notices of appeal filed after June 1, 2018. In the instant case, the record demonstrates that appellant filed separate notices of appeal at each docket number on July 5, 2018; however, the notices of appeal referenced both docket numbers in their respective captions. A recent ***en banc*** panel of this court held that such a practice does not invalidate appellant's separate notices of appeal. ***Commonwealth v. Johnson***, ___ A.3d ___, 2020 WL 3869723 (Pa.Super. July 9, 2020) (***en banc***). Moreover, we note that this case does not involve an appeal of a single order resolving issues arising on both docket numbers. On the contrary, the trial court entered separate sentencing orders at each docket number in this matter, and therefore, ***Walker*** is not implicated. Accordingly, we shall consider the merits of appellant's appeal.

Appellant raises the following issues[8] for our review:

> [I.] Whether the suppression court should have granted [a]ppellant]'s motion to suppress because the Commonwealth committed a **Brady**[9] violation in failing to preserve a mobile vehicle recording of [a]ppellant's driving prior to the stop?
>
> [II.] Whether the trial court should not have admitted the lab report showing blood alcohol content, particularly where the Commonwealth agreed the blood draw was obtained in violation of **Birchfield v. North Dakota**[10]?
>
> [III.] Whether the trial court should have precluded the lab report as the Commonwealth failed to sufficiently establish the chain of custody?

Appellant's brief at 6 (emphasis added, extraneous capitalization omitted).[11]

## I. *Brady* Violation

Appellant first argues that the suppression court erred in denying his

suppression motion because the Commonwealth violated **Brady** by "failing to

---

[8] We note that appellant filed a single brief for Nos. CP-45-CR-0000115-2016 and CP-45-CR-0000876-2016. As noted, this memorandum will address only those issues appellant raises with respect to No. CP-45-CR-0000115-2016. Any issues appellant raises with respect to No. CP-45-CR-0000876-2016 will be addressed at Superior Court Docket No. 2055 EDA 2019.

[9] **Brady v. Maryland**, 373 U.S. 83 (1963).

[10] **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016).

[11] For the ease of our discussion, we have reformatted the numbering of appellant's issues.

preserve [the MVR from Trooper MacMillian's patrol vehicle] of [a]ppellant's driving prior to the stop." (**Id.** at 6, 23-28.)

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), **appeal denied**, 135 A.3d 584 (Pa. 2016).

In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. In order to establish the existence of a **Brady** violation, a defendant must establish: "(1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the

defendant; and (3) prejudice resulted." ***Commonwealth v. Cousar***, 154 A.3d 287, 301 (Pa. 2017) (citation omitted).

Courts in this Commonwealth have continually recognized that "the Commonwealth's ***Brady*** obligation does not extend to information that is not in its possession[.]" ***Commonwealth v. Santos***, 176 A.3d 877, 883 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 189 A.3d 986 (Pa. 2018). Indeed, "[t]he Commonwealth cannot violate ***Brady*** by suppressing evidence that does not exist." ***Commonwealth v. Smith***, 17 A.3d 873, 890 (Pa. 2011) (citation omitted), ***cert. denied***, 567 U.S. 937 (2012). The burden of proof is on the defendant alleging a ***Brady*** violation to demonstrate that the Commonwealth withheld or suppressed evidence. ***Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009).

Here, the record supports the suppression court's determination that appellant failed to satisfy his burden under ***Brady***. At the suppression hearing, Trooper MacMillian testified that he did not request the MVR from his patrol vehicle because he "didn't have any involvement in the investigation" and his role in the traffic stop was only to assist Trooper Petrucci in securing appellant after the traffic stop was completed. (Notes of testimony, 3/29/16 at 59, 61, 62-63.) The suppression court found that this particular MVR did not exist and credited Officer MacMillian's testimony that the MVR cannot be obtained "because such footage is routinely erased after a certain amount of time if not requested." (Suppression court opinion, 5/19/16 at 19 n.19.)

Because appellant has failed to demonstrate that an MVR from Trooper MacMillian's patrol vehicle existed or was ever within the Commonwealth's control, we discern no error on the part of the suppression court in concluding that appellant failed to satisfy his burden that "the evidence was suppressed by the prosecution." ***Cousar***, 154 A.3d at 301.

Additionally, the record supports the suppression court's determination that appellant failed to prove that the MVR at issue was "favorable" to his case, such that its omission prejudiced him. ***See id.*** As the suppression court explained:

> While Trooper MacMillian's MVR recording ***may*** have shown a wider view of [appellant's] right turn, we do not know that and we will not speculate. Two Pennsylvania State Police Troopers testified to the circumstances of [appellant's] right turn. [Appellant's] averment that Trooper MacMillian's MVR may have shown a different scenario does not establish the materiality of such a recording.

Suppression court opinion, 5/19/16 at 20 (emphasis in original).

Based on the foregoing, we agree with the suppression court that appellant's ***Brady*** claim warrants no relief.

## II. *Birchfield* Violation

Appellant next argues that the trial court abused its discretion in admitting his lab report detailing his blood test results,[12] where the blood draw was obtained in violation of **Birchfield**. (Appellant's brief at 6, 29-31.) We disagree.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), **appeal denied**, 76 A.3d 538 (Pa. 2013). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." **Commonwealth v. Antidormi**, 84 A.3d 736, 745 (Pa.Super. 2014) (citation omitted), **appeal denied**, 95 A.3d 275 (Pa. 2014). "Before any evidence is admissible in a criminal proceeding, it must be competent and relevant." **Commonwealth v. Walter**, 849 A.2d 265, 269 (Pa.Super. 2004) (citation omitted), **appeal denied**, 860 A.2d 489 (Pa. 2004). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Pa.R.E. 401(a).

---

[12] As discussed, **infra**, the testimony at trial established that appellant's blood test results showed that no heroin or heroin byproducts were found in his blood. (**See** notes of testimony, 10/12/17 at 24.)

In ***Birchfield***, the Supreme Court of the United States addressed the constitutionality of warrantless searches of breath and blood under the Fourth Amendment; specifically, with regard to the search-incident-to-arrest and consent exceptions to the warrant requirement. ***Birchfield***, 136 S.Ct. at 2184. The ***Birchfield*** Court held, ***inter alia***, that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment to the United States Constitution and that a state may not criminalize a motorist's refusal to comply with a demand to submit to blood testing. ***Id.*** at 2185-2186 (holding, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."). Following ***Birchfield***, this court held that Pennsylvania's implied consent scheme was unconstitutional insofar as it threatened to impose enhanced criminal penalties for the refusal to submit to a blood test. ***Commonwealth v. Ennels***, 167 A.3d 716, 724 (Pa.Super. 2017), ***appeal denied***, 182 A.3d 431 (Pa. 2018).

Although we agree with appellant that the results of his blood draw were not admissible in the Commonwealth's case-in-chief pursuant to ***Birchfield***, we find no merit to his argument that the introduction of said results was not relevant for **any purpose**. It is well settled that

> **[e]vidence that might otherwise be inadmissible may be introduced for some other purpose, particularly where Appellant's own testimony "opens the door" for such evidence to be used for impeachment purposes.** A litigant opens the door to inadmissible evidence by presenting proof that

- 12 -

creates a false impression refuted by the otherwise prohibited evidence.

***Commonwealth v. Murphy***, 182 A.3d 1002, 1005 (Pa.Super. 2018) (citations and internal quotation marks omitted; emphasis added); ***see also*** Pa.R.E. 607(b) (stating, "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules.").

Courts in this Commonwealth have long recognized that evidence that a witness was under the influence of alcohol or drugs at the time of the events to which he testified is relevant to the witness's credibility and therefore admissible. ***See Commonwealth v. Drew***, 459 A.2d 318, 321-322 (Pa. 1983); ***Commonwealth v. Williams***, 91 A.3d 240, 244 (Pa.Super. 2014) (***en banc***). Specifically, in ***Williams***, a panel of this court held that the trial court committed an error of law in excluding evidence of the victim's blood alcohol content, where it would have allowed the jury to perform its core function of assessing the victim's credibility and the weight of his testimony. ***Williams***, 91 A.3d at 244. Relying on ***Drew***, the ***Williams*** court concluded that "evidence of a witness'[s] intoxication is admissible impeachment evidence where the witness was intoxicated during the event to which he or she testifies." ***Id.***

Here, the record establishes that the Commonwealth introduced evidence of appellant's blood test results showing an absence of heroin in his system only after appellant "opened the door" and testified he had used heroin

on the day he was apprehended. (Notes of testimony, 10/11/17 at 157.) The Commonwealth was in possession of blood test results that directly refuted appellant's testimony, which it introduced during its examination of forensic toxicologist Donna Papsun. Specifically, Papsun testified as follows:

> Q. Let me ask you a question related to heroin and the two subsidiaries that break down. Were either one of those found in this case?
>
> A. No.
>
> Q. And when you say they weren't found in this case, they weren't found at any level; is that correct?
>
> A. No.
>
> Q. And would it be fair to say that at the time you tested that specimen none of those components were contained within the blood?
>
> A. No, or they were essentially so low in the system that -- so low in the blood that it wouldn't trigger any kind of screen. It wouldn't trigger our testing.

Notes of testimony, 10/12/17 at 24.

Contrary to appellant's contention, the Commonwealth's introduction of this evidence on rebuttal for impeachment purposes was not precluded by *Birchfield* and was entirely proper under *Murphy*, *Williams*, and Rule 607. Accordingly, we agree with the trial court that appellant's *Birchfield* claim merits no relief.

## III.  Chain of Custody

In his final claim, appellant contests the introduction of the lab report detailing his blood test results on the basis the Commonwealth "failed to sufficiently establish the chain of custody."  (Appellant's brief at 6, 32.)

It is axiomatic that:

> In order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived.
>
> > On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.  The princip[al] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial.  Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

*Commonwealth v. Russell*, 209 A.3d 419, 429 (Pa.Super. 2019) (citations omitted).

Here, the record reflects that although appellant expressed chain of custody concerns earlier during trial,[13] he failed to make timely and specific objections to both the laboratory's intake documents detailing the chain of

---

[13] **See** notes of testimony, 10/12/17 at 4.

custody for the blood specimen and the toxicology report at the time they were admitted into evidence. The following transpired at trial:

> [Commonwealth]: Your Honor, I don't have any further questions for Ms. Papsun. I would move for admission of the two exhibits.
>
> THE COURT: They were 7 and 8 or 8 and 9?
>
> [Commonwealth]: Eight and 9. I believe 7 -- was the CV yesterday.
>
> THE COURT: Any objection, [appellant's counsel]?
>
> [Appellant's counsel]: No objection.

Notes of testimony, 10/12/17 at 24.

In light of the foregoing, we agree with the trial court that appellant's chain of custody claim is waived for failure to raise it in a timely and specific manner. (***See*** trial court opinion, 6/22/18 at 8; ***see also Commonwealth v. Sauers***, 159 A.3d 1, 9 (Pa.Super. 2017) (stating that the failure to offer a timely and specific objection results in waiver of the claim), ***appeal denied***, 170 A.3d 1057 (Pa. 2017).)[14]

---

[14] Alternatively, even if we were to reach the merits of appellant's chain of custody claim, we would find that it warrants no relief. "Chain-of-custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial[.]" ***In re D.Y.***, 34 A.3d 177, 185 (Pa.Super. 2011) (citation omitted), ***appeal denied***, 47 A.3d 848 (Pa. 2012). It is well settled that "any issue regarding gaps in the chain of custody relate to **the weight of the evidence**, not its admissibility." ***Commonwealth v. Witmayer***, 144 A.3d 939, 950 (Pa.Super. 2016) (citations omitted; emphasis added), ***appeal denied***, 169 A.3d 27 (Pa. 2017). "A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were

For all the foregoing reasons, we affirm the trial court's January 2, 2018 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/20

---

first received until the time of trial." ***Commonwealth v. Alarie***, 547 A.2d 1252, 1255 (Pa.Super. 1988) (citation omitted), ***appeal denied***, 557 A.2d 720 (Pa. 1989). Here, both Papsun and Detective Mario Orlando testified at great length with regard to the chain of custody of appellant's blood specimen, and the fact-finder evidently found this testimony credible. (***See*** notes of testimony, 10/12/17 at 14-18, 30-33.) We are precluded from reweighing the evidence and substituting our judgment for that of the trier-of-fact. ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013).